## NATIONAL LABOR RELATIONS BOARD v. PENNWOVEN, Inc.

No. 10565.

United States Court of Appeals
Third Circuit.

Argued Dec. 6, 1951.

Decided Jan. 11, 1952.

Rehearing Denied Feb. 4, 1952.

522

Frederick U. Reel, Washington, D.C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Ruth V. Russell, Atty., National Labor Relations

Board, Washington, D. C., on the brief), for petitioner.

Julius Kass, New York City (Bandler, Haas & Kass, Richard L. Halpern, New York City, on the brief), for respondent.

Before BIGGS, Chief Judge, and MARIS and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This is a petition in the usual form for the enforcement of a Labor Board order against the respondent, Pennwoven, Inc.

■ That portion of the Board's order which concerns interference with employees in their choice of organization is well founded. Indeed, the respondent hardly questions that there is adequate proof of interference by management in free choice by employees when District 50 United Mine Workers, the then bargaining agent at the respondent's plant, was competing with the American Federation of Labor for that position. The decree, in the usual form following proof of such violation of Section 8 (a) (1), 61 Stat. 140 (1947), 29 U.S.C.A. § 158, will be enforced.[1]

■ We may dismiss without discussion a contention made by the respondent in which he complains that the Trial Examiner was biased. We have examined both the arguments and the record on which the arguments are based and conclude that there is nothing to this contention whatever.

This brings us to the novel and difficult question in the case. It concerns three employees against whom discrimination because of union activity is charged. The Board has made a reinstatement order with the usual back pay allowance. And the respondent in answering the petition for enforcement makes this portion of the Board's order his chief point of opposition.

These three employees were all concerned in the effort to supplant a District 50 union with the American Federation of Labor. Two of them were very active, the third, husband to another of the three, did not do so much but went along with the activities of his wife. During the period when this unionizing activity was in process the respondent's plant had its usual, annual shutdown period. This was in accordance with past practice and no objection arises to it. When the plant reopened it was operated with one shift of employees instead of three as before. This was due to business conditions and out of this, too, no complaint arises. As operations continued, after the reopening, there became need for additional employees. It is here that the facts develop out of which controversy on the point under discussion arises.

■ The Board, on behalf of these three employees, says that they were discriminated against because their activities on behalf of the American Federation of Labor had displeased the employer. The Company says that that is not the case; that one of these employees was incompetent, that another was not rehired because of "personal" reasons and so on. We are not the fact-finders although we do have responsibility for a review of the case upon the "whole record." Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

■ On that record there is no difficulty in upholding the conclusion of discrimination which the Board has drawn. We think it a fair inference that management considered these three people a nuisance, especially Jennie Rayhorn, who was the most active in the A. F. of L. organizing work.

This brings us to the exact and difficult point of the case. In the Labor Management Relations Act of 1947 a limitation provision was inserted. Precise words are "Provided, That no complaint shall issue based upon any unfair labor practice oc-

1. Briefly, the record shows that employees were interrogated concerning how they intended to vote in the election held on December 18, 1948. Some of them were told their jobs would be jeopardized if the A.F.L. won the election. In addition a Christmas party for employees was announced by the company shortly before the election when no such parties had been given before. The company posted a notice shortly before the election that it would soon be delivering checks for retroactive pay increases under a contract negotiated with District 50. All this occurred within the period of six months prior to filing of the charge.

curring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made * *." 29 U.S.C.A. § 160(b). Is that part of the Board's order having to do with the reinstatement of these employees barred by this limitation provision? The charge in this case was filed April 28, 1949, was amended on July 18, 1950 and the complaint issued on July 18, 1950. We must look to the statutory language and consider whether the conduct on which the reinstatement claim is based took place within the limitations period prior to the filing of the charge.

 These three workers were not called back when the plant reopened following the shutdown in the summer of 1948. Under the labor contract then in existence, they were entitled to be called back because of their seniority. Employees junior in seniority to them were put to work and they were left out. The violation of the contract between the union and the employer is not, of course, an unfair labor practice for us to deal with under the statute. But the failure to recall these employees in order of their seniority because of their activities on behalf of a union not favored by the employer would be an unfair labor practice. The words of the statute are appropriate. "It shall be an unfair labor practice for an employer * * By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *." 29 U.S.C.A. § 158(a) (3).

The employees in question considered themselves to have been discriminated against and initiated grievance proceedings against the employer through District 50. These never came to hearing or settlement. The facts are cited only to show that: (1) There was a basis for the charge of discrimination in July, 1948, and (2) That these employees were fully conscious of the fact.

Fifth grade arithmetic will show that it is more than six months from the time of this discriminatory failure to rehire and the time charges were filed. But it is contended on behalf of the Board that such discriminatory failure to rehire is comparable to a continuing tort like that of a nuisance created by a factory which emits noxious fumes across the plaintiff's land. See Prosser, Torts, p. 579 (1941). If that theory is taken, the reimbursement for the discriminatory failure to rehire would be limited to the period beginning six months before the charges were filed. This the Board has done in the instant case.

The respondent's position is that this makes a "mockery" of the limitation period established by legislative action. Its theory, though not expressed in these terms, is that a discriminatory failure to reinstate an employee is comparable to a single tort like an assault and battery or such repudiation of a contractual obligation as to constitute a total breach.

The same sort of problem is presented in considering at least one other of the possible unfair labor practices under the statute. This is the refusal to bargain in good faith with a union. Suppose an employer tells the union officials that he dislikes unions and will have nothing to do with them and demands they leave his office. That quite clearly is an unfair labor practice under the statute, 29 U.S.C.A. § 158(a) (5). Suppose now that instead of filing charges forthwith the offended party lets the matter run on for a year. May charges now be filed on the theory that although the employer has said nothing more the refusal to bargain is a continuing one? Suppose the charges come five years later with no further conduct on the part of employer. Is the failure to bargain still a continuing "unfair labor practice?"

 The question is not one which is settled by authority and we must face it de novo. We bear in mind that the Congress inserted this limitation provision because there had been complaint that people were being brought to book upon stale charges. The rather brief limitation period was an effort to shorten up the time in which respondents could be called to answer charges of unfair labor practice. The legislative

history and contemporaneous discussion shows this, we think.[2]

■ If we take the position that a discriminatory failure to reinstate an employee is to be treated like a continuing tort, that employee's case will never be closed until it is finally litigated. Ten years after the event, he can still file charges that he was discriminatorily discharged and that he should be reinstated with back pay. The Board concedes that his back pay would only start from the day six months before the filing of the charges. But subject to this limitation, on the Board's argument, his claim for reinstatement and back pay will keep on so long as he lives or until he is reinstated. We do not think that such an interpretation of the statute accomplishes the legislative purposes. We conclude that when the respondent in this case failed to call these three people back to work and they knew it and knew, or thought they knew, why they were not being called back, the respondent's act of discrimination had taken place and his liability accrued thereupon. We do not think it continues indefinitely but is barred if charges are not brought within six months.

What we have said above really disposes of the case. But another point has been raised by the Board and contested by the respondent. The Board says that another definite act of discrimination was committed against these three workers when the respondent failed to give them employment following nearly identical letters written by each of them to the respondent which bear date April 16, 1949. The theory is that these letters asked respondent to employ them and that the respondent failed to do so because of their prior A. F. of L. activities. The dispute between the parties is whether these letters apply for employment or whether they are demands for reinstatement to positions held previously. If the latter, they are demands quite clearly made too late to comply with the six months limitation provision.

To understand the point, the letters must be quoted. They are all alike except for the statement of employment records. The first, that of Jennie Rayhorn, reads as follows:

"My employment with Pennwoven, Inc., was severed on June 30, 1948 by the company when the second shift was temporarily eliminated. I was laid off without regard for my seniority which was guaranteed to protect my job under the then existing labor agreement between Pennwoven, Inc., and Local No. 12318 of District 50—United Mine Workers of America, which at that time was recognized by Pennwoven, Inc., as the sole and exclusive bargaining agency for all production and maintenance employees of Pennwoven, Inc.

"At the time of my lay-off on June 30, 1948 I was employed by Pennwoven, Inc., for 16 years and 3 months, and should have been retained because employees with less seniority were retained in your employ.

"Since my lay-off on June 30, 1948 Pennwoven Inc., has hired new employees without offering me reinstatement to my former job.

"I have been available for re-employment at all times since June 30, 1948 and am available at this time, but to date have not received any offer from Pennwoven, Inc., of re-employment.

"I believe my separation from employment with Pennwoven, Inc., and refusal of re-employment was and is due solely to my membership in and activities on behalf of the American Federation of Labor, and my

2. The Report of the House Committee on Education and Labor on H.R. 3020 states, "It has not been unusual for the Board, in the past, to issue complaints years after an unfair labor practice was alleged to have occurred, and after records have been destroyed, witnesses have gone elsewhere, and recollections of the events in question have become dim and confused." Rep.No.245, 80th Cong. 1st Sess., p. 40. It may be noted that the original House Resolution provided for a six month limitation on the filing of the charge and a six month limitation for issuance of the complaint after the charge was filed. The latter was dropped only because the Congress felt that with a new and enlarged Board no delays of this nature would be likely to occur. See House Conference Report No. 510 on H. R. 3020, p. 53 (1947). See N. L. R. B. v. Clausen, 3 Cir., 1951, 188 F.2d 439, 443.

efforts to induce my fellow employees to join the A. F. of L., and have the A. F. of L. certified as bargaining agent for production and maintenance employees of Pennwoven, Inc.

"This action constitutes a violation of my rights as a worker under the National Labor Relations Act as amended, and also constitutes an unfair labor practice by Pennwoven, Inc., under the Act.

"Before seeking redress under the provisions of the National Labor Relations Act I am herewith informing you of my availability for re-employment and would appreciate an early statement of my status as an employee of Pennwoven, Inc."

 Even if we take the theory that a new claim under the statute may arise upon proof of acts of discrimination following the original refusal to rehire, the failure to act upon receipt of this letter is not such an act. We find it impossible to understand this letter as anything but a demand for reinstatement to a former position with all the benefits that such reinstatement could bring. The Board calls the letter "an unconditional application for employment." If that is a fact-finding we cannot accept it. If it is comment or argument we are likewise compelled to disagree. There is nothing we can say to support our position which is any stronger an argument for it than the text of the letter itself.

The result of our consideration is that the Board's order will have to be modified to eliminate orders for reinstatement of these employees and back pay provisions for them. The reason is given in what we have said already but to make our position perfectly clear we restate it. The evidence of discrimination on the part of the defendant is such that a finding of discrimination would be upheld. But the charges were filed too late. To adopt the Board's theory of the continuing violation is not in accordance with what we believe the intent of the Congress was in establishing the six-months limitation period.

The order of the Board will be modified in accordance with this opinion and as so modified will be enforced.

BIGGS, Chief Judge (concurring).

I concur in the views expressed in Judge Goodrich's opinion as to the discriminations practiced by Pennwoven, Inc. and would enforce the order of the Board as modified by the decision and order of this court. I agree also with the conclusion that the Board cannot compel Pennwoven, Inc. to reinstate the Rayhorns and Bechtol but I think I should state my grounds for this conclusion.

Bechtol, a weaver, had a seniority of 51. Wohlfert, also a weaver, standing 60 in seniority, was reemployed on July 19, 1948. This was the last point in time (the Board's continuing tort theory aside) when there was discrimination against Bechtol. A similar final discrimination was effected against Jennie Rayhorn, a weaver, whose seniority was 9, when on July 19, 1948, Nestlerode, also a weaver, with a seniority of 13, was reemployed. The final discrimination against John Rayhorn, a wrapper, standing 15 in seniority, occurred when, on July 19, 1948, Heaton, also a wrapper, with a seniority of 34, was reemployed. See 29 U.S.C.A. § 158(a) (3).

Analogizing causes of action in tort with discriminations under the Act I conclude that the "causes of action" of the three employees named could have accrued no later than on the dates designated and charges based on these discriminations could have been filed and maintained against Pennwoven, Inc. if filed within six months. The limitation provision of the Taft-Hartley Act, 29 U.S.C.A. § 160(b), is phrased like the typical statute of limitations and was obviously intended by Congress to operate as such. It follows that when the six month period provided by the Act had expired no valid charge could be filed with the Board. The statute of limitations could not be tolled by the letters of April 16, 1949.

Congress obviously did not intend to permit the application of a doctrine of continuing tort. If the view of continuing tort be adopted Pennwoven, Inc. could be held guilty of unfair labor practices a year or a decade after the occurrence of acts of discrimination by a mere demand for reinstatement, oral or written, by the employee.

Such a result seems to me to be precisely what Congress intended to avoid by the limitation provision of the Taft-Hartley Act. The policy involved is for Congress and not for the courts.