### NATIONAL LABOR RELATIONS BOARD v. CHILDS CO. et al.

No. 60, Docket 22102.

United States Court of Appeals Second Circuit.

Argued March 5, 1952.

Decided April 4, 1952.

---

618

Chase, Circuit Judge, dissented in part.

George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, Frederick U. Reel and Marvin E. Frankel, all of Washington, D. C., Marvin E. Frankel, Washington, D. C., of counsel, for petitioner National Labor Relations Board.

Garey & Garey, New York City, William Helfer, New York City, of counsel, for respondent Childs Co.

Boudin, Cohn & Glickstein, New York City, Vera Boudin and Daniel W. Meyer, New York City, of counsel, for respondent Chain Service Restaurant Employees Union, Local 42.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The National Labor Relations Board (hereinafter called the Board) has petitioned for enforcement of its order of February 15, 1951, directing Childs Company, a restaurateur (hereinafter called Childs), and Local 42 of the Restaurant Employees Union (hereinafter called the Union) to cease and desist from specified unfair labor practices. The order further provides that Childs offer its employee Russell R. Potter immediate employment and requires Childs and the Union to make Potter whole for any loss he may have suffered from October 28, 1948, because of the refusal to hire him.

In September 1948 Potter filed with the Board a charge that Childs discharged him on January 23, 1948 upon the ground that a closed shop agreement between Childs and the Union gave the latter power to demand his discharge though his dues were paid to date. On October 29, 1948, Potter filed an amended charge alleging in addition that he had been denied reinstatement when he requested it on October 28, 1948.

The Trial Examiner and the Board found that Childs and the Union entered into a collective bargaining agreement containing a closed shop provision on December 3, 1947, which by its terms expired on September 30, 1948, and that this agreement was renewed on October 6, 1948, to continue until May 1, 1950. The closed shop agreement was unquestionably illegal since it was made subsequent to the passage of the Taft-Hartley Law. 29 U.S.C.A. § 158(a) (3). The Board's jurisdiction has been shown, N. L. R. B. v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284, and so much of

the order as requires Childs and the Union to cease and desist from entering into or giving effect to the union security provisions of the collective bargaining agreement should be enforced.

The Union and Childs argue that the order is erroneous in so far as it grants employment and back pay to Potter because Section 10(b) of the Taft-Hartley Act, 29 U.S.C.A. § 160(b) provides that: " * * no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board * * *." It is undisputed that Potter was discharged by Childs on January 23, 1948, and that this was done at the Union's request after his expulsion from the Union for anti-union activities. As the Trial Examiner held in his Intermediate Report: "Any and all rights whatsoever flowing from the illegal discharge were extinguished by reason of Potter's failure to file his charge based thereon with the Board within the 6-month period required by Section 10(b) of the Act." The Board apparently conceded that Potter's cause of action based on his discharge of January 23, 1948, was barred. The Trial Examiner also held that Potter had not requested new employment except as conditioned upon reinstatement to his former position and rights of seniority and back pay. The Board, however, held that Potter in a letter to Childs on October 23, 1948, had unconditionally asked for new employment. It thus found a new discrimination, this time with respect to hiring, which occurred on October 28, 1948, when Childs refused employment to Potter because of its closed shop contract with the Union. In our opinion the Board's finding that the letter of October 23, 1948, constituted a demand for new employment is not supported by the record.

Briefly the facts are as follows: On June 24, 1948, Potter wrote a letter to Mr. Frank, the chairman of the board of directors of Childs, the text of which is set forth in the margin.[1] On July 8, 1948, the Com-

1. "You may recall under date of March 31, 1948, as you assured the Chairmanship of Childs Company, I took the liberty of writing you, introducing myself as a stockholder and a former employee of same for more than 30 years. Which for some reason has not been acknowledged as being received.

"In same I informed you that my severance from the company was due to a cooked up conviction 'that I attempted to break the strike' last year. Which caused union officials to demand my discharge. Which came to past without the company's management and personnel department putting in the least objections. Such as the Bloomingdale Department Store so fearlessly did to protect three individual employees against discharge demands of union officials.

"Which, if you have followed the papers, has caused an investigation to be soon started in Washington by Representative Hartley to ferret out 'those employers who haven't had the guts to stand up and be counted under the Taft-Hartley Law provisions.'

"And since you are one of the new stockholders with the company, I will say, one would have great difficulty to find another companys management that has played ball and had less 'Guts' over the life of unionism's rampant, than the

one the board of directors just recently restored back in office. In fact most condoned the strike. Since they always expected and received corresponding salary increases simultaneously after every demand. And sad it was for all stockholders that has hung on, that war operation profits inable them to beguile the Court and the Trustee (over the recommendation of S. E. C.'s report that their management be held in the responsibility for bankrupting the company) into restoring the operating slate back into office by recommending and obsolving them of blame.

"Whereby if we judge by new stock lows, in a bull market, the company is again turning out to be another white elephant at the expense of a new crop of stock holders who accepted their post war projections and still hold on.

"Any way in face of the injustice and abuse the company's management has condoned union officials to deal the cards against me. I have desided to try and interest Representative Hartley's investigation into my case and complaint along with other chain stores his news cast of this date mentions.

"Of course I would like to have the goodwill of all New Directors in the matter. Who I am sure. No more so than

pany acknowledged receipt of this letter and advised Potter that his complaint was receiving consideration. Apparently no further communication was had until October 23, 1948, when Potter again wrote Mr. Frank as follows:

"This will again bring to your attention the fact that you have apparently failed to comply with the assertion of your letter to me of July 8th. Which was made in respond to mine of June 24th. In which I voiced to you as New Company Leader, my complaint against my loss of job with the company at the demand of Local 42 officials. Especially the fact that the Company's Personnel Director flouted the Taft-Hartley Act in complying with such demands.

"Any way, since no further disposition of of same was received, I desided to take such complaints to the National Labor Relations Board for airing. Which you may or may not know about. And since I had contacted you on the matter I felt I might be sure you are made aware of same."

It is to be noted that the foregoing letter followed the filing of Potter's original charge with the Board in September 1948. On October 28, 1948 the Company replied to Potter's letter as follows:

"Your letter of October 23rd, 1948, addressed to Mr. Frank, has been referred to me. I have reviewed the situation and find, that pursuant to the terms of a contract between the Company and Chain Service Restaurant Employee's Union, Local 42, the Company was required to terminate your employment with it. Under these circumstances, the Company cannot restore you to your former position."

The next day Potter filed his amended charge with the Board in which he reiterated his original charge filed in September and added: "On October 23, 1948 I wrote to the Company and requested that I be reinstated to my former position. On October 28, 1948, I was informed by the Company that pursuant to the terms of the existing labor contract, they could not reinstate me to my former position."

The last communication was a letter of Potter to Childs on April 10, 1949, as follows:

"This is an inquiry to ascertain whether you have by this time become familiar with the Taft-Hartley Act, to recognized that you erred in submitting to the Union's demand to terminate my employment with Childs Company at 109 West 42nd Street. As you officially stated in letter of October 28th, 1948. 'Pursuant to union contract you was required to do.'

"In the event you may have detected same was made in error. Please except this as another request to be reestablished in the employment of the company with former rights. As well as compensary losses I have so suffered as a results. Which you perhaps are aware is claims I have pending with the National Labor Relations Board."

The April letter was excluded from consideration by the Board apparently on the theory that it was not indicative of Potter's intent at the time of the letter of October 23, 1948, in which the Board found that Potter had requested new employment.

We cannot see any justification for the conclusion of the Board that Potter was asking for new employment rather than reinstatement to his former position and rights. His letter of October 23, 1948 refers to two things: (1) his letter of June 23 in which he complained generally of the Company's failure to oppose the Union's request for his discharge, and (2) the charge he had filed with the Board in September, in which he complained only of the illegality of his discharge. How either reference can be construed as a demand for new employment rather than one for restoration of former rights is beyond our comprehension. In the amended charge

Bloomingdale directors did; Would condone without a fight union officials' acts of kicking individual employee stockholders around.

"I will add, that I would like you, as Chairman, to bring same to the attention of all careing directors. Outside of Mr. Finn who I have already informed of same."

filed October 29, 1948, he himself said that the letter was a request for reinstatement to his former position. The letter of April 10, 1949, ties in with all his former utterances and is to be read as interpreting and reaffirming them. It conclusively shows that he was at all times seeking reinstatement to his former rights and not merely new employment. As we have already said, restoration to these rights was barred by failure to file his charge in time and therefore the Company was not required to accede to his demand. So the Third Circuit held in N. L. R. B. v. Pennwoven, Inc., 194 F.2d 521, where the same issues as here seem to have been presented.

The Board argues that even though Potter may have demanded more than he was entitled to the Company was bound to offer him new employment. But Potter had claimed a different right, to wit: reinstatement, and had failed to assert it in time. The statute only prevents discrimination in regard to hire where the discrimination encourages or discourages membership in labor organizations. 29 U.S.C.A. § 158(a) (3). It is not apparent to us how the Company was bound under the statute to give Potter a right that he never asked for and how failing to give him such a right constituted discrimination forbidden by the Act.

The petition for enforcement is granted as to I(a) (1, 2 and 3), I(b) (3[2] and 4), II(a) (1, 2 and 3), II(b) (1,[2] 2[2] and 3) of the order. Enforcement of the remainder of the Board's order dealing with Potter's reinstatement and back pay is denied.

L. HAND, Circuit Judge.

I concur, but by an interpretation of § 10(b) of the Labor-Management Relations Act[1] not quite the same as that of the opinion in chief. The question is as to the meaning of the words "any unfair labor practice occurring more than six months prior to the filing of the charge", and, as I understand the opinion, this limitation ran against Potter only because he demanded reinstatement in, and restoration to, his original position with back pay and seniority. Had he merely asked for new employment dating from the time of his demand, it would have been an independent "unfair labor practice" to refuse him, although the refusal were for the original reason: i. e., that the union unlawfully demanded it. It is indeed possible so to read the words, but it seems to me that to do so defeats the purpose of the limitation, because it results in making a new "unfair labor practice" out of each repeated refusal of the employer to relent and retract. The necessary consequence is that the initial wrong can be made to persist indefinitely, unless the employer finally recants and the same must be also true as to the union. It is true that the Third Circuit in National Labor Relations Board v. Pennwoven, Inc., 194 F.2d 521, did not decide the point, because there too the employees asked for "reinstatement," or at least so the court held, in that respect reversing the Board. However, the arguments, on which the opinions based their construction of the section, apply equally to a refusal to grant employment de novo as to a refusal to reinstate. These were that it was a corollary of the Board's position that a discharged employee could never recover future wages; and that there never could be an end to the controversy because in the Board's view the wrong was a continuing tort."

I do not believe that by abating a part of his original relief—seniority and back pay—an employee can keep alive an "unfair labor practice," to which the employer continues to adhere. I of course agree that if the employer refused Potter employment upon a new ground, which also constituted an "unfair labor practice," the statute would not apply; but it seems to me that when Potter was discharged without condition, the wrong done him should be deemed indivisible, and that to construe the statute as giving him the privilege of keeping alive a part of his grievance, though not the whole, would not conduce to that industrial

2. Those portions of the notices that are to be posted by Childs Company and the Union which deal with Potter's reinstatement shall be deleted.

1. § 160(b), Title 29, U.S.C.A.

peace which it is the overall purpose of the Act to secure.

CHASE, Circuit Judge (dissenting in part).

I think the decision of the Board should be affirmed in its entirety. This record leaves no doubt whatever that Potter desired to work for the Childs Company and his letters of June 24, 1948 and October 23, 1948 were reasonably read by the Board as an application for a job. Failure to hire him in October was, by itself, discriminatory and an unfair labor practice as the Board held. As the Board said, "Examination of these letters reveals, however, that while they are inartistically drawn, the writer was seeking concrete relief in the form of employment. Any doubt the Company might have had about Potter's wish to be hired following its receipt of his June 1948 letter must have been dispelled by his October 23 letter, which was written after the filing of the initial charge and the Company's failure to make a disposition of matters discussed in the June 1948 letter. The Company's reply of October 28, 1948, clearly shows that it considered Potter's October letter to be a request for employment as a waiter for in it the Company refused to restore him to his former position, although it was at that time hiring waiters. Accordingly, we find that on October 23, 1948, Potter requested employment by the Company."

Its refusal to hire cannot be justified as merely the denial of a request for reinstatement with former rights. N. L. R. B. v. Pennwoven, Inc., 3 Cir., 194 F.2d 521, dec'd Feb. 4, 1952, is distinguishable on that ground. Such a request for reinstatement was not coupled with his request for employment until long afterward in his letter of April 10, 1949. Moreover, the letters of a laborer obviously unskilled in the niceties of the labor laws should not be read with the strictness which was the old-fashioned way to construe legal pleadings. It is enough that they told the employer that the man wanted to be hired and it is most harsh to allow the Company to flaunt the law as though it had said to him, "Well, we know you have asked for a job as a waiter and we are hiring waiters but you haven't denied that what you really want is reinstatement with seniority and back pay. You have lost the right to make us do all that for you and so we will ignore your application for the same reason that we fired you in the first place." Thus Potter's failure to act within the time limited for the legal redress of one wrong has put him in a class apart. While an application by other waiters for a job with this employer need only give the employer to understand that a job is wanted, he must, if this decision is sound, be skilled enough in labor law to choose language in making application which will give him rights under the Act not only to show that he wants a job but to amount to a disclaimer, not merely an abandonment, of everything of which he had been unlawfully deprived.

Absent such a narrow approach to the interpretation of his letters of application, the finding of the Board was not clearly erroneous and should be given effect on familiar principles. Indeed, the more liberal attitude toward the interpretation of the demands of those unskilled in stating them which prevailed in our recent decision in N. L. R. B. v. Electronics Equipment Co., 2 Cir., 194 F.2d 650, dec'd February 18, 1952 should be followed here in upholding what the Board has done.