**NATIONAL LABOR RELATIONS BOARD v. F. H. McGRAW & CO. et al.**

**No. 11778.**

United States Court of Appeals Sixth Circuit.

June 4, 1953.

Petitions for Modification and Rehearing Denied July 7, 1953.

Joseph Lotterman, New York City, for respondents.

George J. Bott, Gen. Counsel, David P. Findling, Asso. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Samuel M. Singer, Dean E. Denlinger, Attys., N. L. R. B., Washington, D. C., on brief, for petitioner.

Wheeler & Marshall, Paducah, Ky., and Lotterman & Tepper, New York City, on brief; James G. Wheeler, Paducah, Ky., Ralph R. Weiser, New York City, of counsel, for respondent F. H. McGraw & Co.

Before MARTIN, McALLISTER, and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

The National Labor Relations Board filed a petition for enforcement of its order requiring respondents to cease and desist from unfair labor practices in violation of Title 29 U.S.C.A. § 158(a) (3) and (1) and (b) (2) and (1) (A), in continuing in existence, maintaining in effect, entering into and enforcing illegal hiring agreements and arrangements between the company and the International Union of Operating Engineers, A. F. L., and its Local 181, hereinafter called the Union, and, further, requiring respondents to post the appropriate and customary notices directed by the Board.

In 1951, respondent company entered into a contract to erect a plant for the Atomic Energy Commission, covering many square miles, near Paducah, Kentucky, at a cost of approximately $350,000,000, and in carrying out such construction work, it has employed a force of between 10,000 and 12,000 workmen.

The agreements and arrangements which the Board found constituted unfair labor practices grew out of a written collective bargaining agreement entered into between the union and respondent company on July 29, 1948, and covered the company's operations on a nationwide basis. Among its provisions, the company agreed to pay the scale of wages, work the schedule of hours, and conform to the conditions of employment in force and effect in the locality where the company would be performing work. The company, in this contract, also agreed to employ only members of the union in good standing on work coming under its jurisdiction, provided the union could promptly furnish such workmen. The contract was automatically renewed on a year-to-year basis, unless timely notice to terminate was served or in case its terms in this regard were changed or amended by the parties through mutual agreement; and this contract was in effect at the time of the hearing before the Board.

In accordance with the terms of this agreement to conform to the scale of wages, schedule of hours, and conditions of employment in force and effect in the locality where the company performed work, re-

spondent company made it a practice to abide by the terms and conditions of whatever area agreements were in effect with local affiliates of the International union having territorial jurisdiction where the projects of the company were located.

In conformity with the above general pattern, the Board found that respondent company, when it began hiring early in 1951 at the Paducah project, considered itself bound in its hiring practices by the agreement in force between construction contractors in that area and Local 181, the affiliate of the International union having territorial jurisdiction, although no written contract was executed by the respondent company and the Local union; that one of the clauses in the area agreement, to which respondent company orally agreed, provided that the contractor agreed to employ through the office of Local 181, only members who were in good standing with the union, and that the union would have 48 hours to fulfill requests for operating employees. Such findings were amply sustained by substantial evidence.

The Board further found—and such findings were sustained by substantial evidence on the record as a whole—that the following hiring procedure had been worked out between the company and Local 181: Upon receipt of a requisition slip from the department head calling for a certain number of operating engineers in described classifications, the company's personnel office contacted the business office of the Local, usually by telephone, and requested the dispatch of qualifying applicants. The Local then sent to the company's office the number of men requested, each with a referral card from the Local, showing his name, craft, and prevailing rate. The men thus referred were considered·by the company's personnel office and hired if deemed qualified. The methods followed by the company in the hiring of the employees required the execution of an application form, which asked the applicant to disclose the name of any union in which he held membership. All craft employees within the jurisdiction of the International and Local 181 were hired through the Local, in accordance with the foregoing procedure; and the com-

pany made no attempt to obtain such employees from any other source. Nonmembers of the union, or members of another local, seeking a referral from the Local to the company, were obliged to obtain a work permit from the Local, for which there was a fixed fee of $2.50. In referring employees to the company, the normal policy of the Local was to give preference, first, to its own members, and secondly, to other members of the International, with members of other unions and nonunion employees ranking last, although it appears that there were so many jobs to fill that nonmembers of the union did not suffer exclusion from employment by the company through the above mentioned methods. However, if a member of the International union was delinquent in the payment of dues or other charges assessed against him, the Local would not refer him for employment. In addition to giving effect to the union security clause of the 1948 contract between the company and the International, the company agreed to carry out other provisions of the areawide agreement between the Local and construction contractors performing work within the Local's territorial jurisdiction. Moreover, the company recognized the Local as the bargaining representative of its employees in the job classifications covered by the agreement, and dealt with the Local as such representative. Respondent company has attempted to follow all the terms and conditions of employment set out in the area agreement, such as the scale of wages fixed therein; and it has negotiated with the Local all grievances arising from asserted departures from the provisions of the agreement. The Local likewise regarded the standard areawide contract as binding on respondent company, although unsigned by it. As an instance, in grievance negotiations, the Local took the position that respondent company was obliged to follow the terms and conditions of the standard area contract to which it had agreed verbally; and in a representation proceeding instituted upon petition of a rival union seeking an election among at least some of the covered employees, the Local appeared as an intervenor and joint respondent, in contending that the petition

was barred by the written nationwide agreement of 1948 between respondent company and the International, as well as by the local area agreement between respondent company and the Local, which had been adopted by the company.

█ At this point, it should be remarked that, with regard to the foregoing findings of the Board, respondents submit that Section 10(b) of the Act, 29 U.S.C.A. § 160(b), forbids the entry of findings of unfair labor practices based upon conduct occurring more than six months prior to the filing and serving of charges, and that, in this case, the Board's findings were invalid because the 1948 contract was executed more than six months before the filing and serving of the charges in the proceedings here in question. However, the unfair labor practice alleged in the complaint was not the execution of this contract, but its enforcement and implementation after June, 1951, all of which took place within the period of limitations provided in the Act. As long as the contract in violation of the Act continued in force, a continuing offense was being committed; and since the contract was in force at the time of filing, the six-month period of limitations had not begun to operate; and the complaint was, in all respects, valid. Katz v. National Labor Relations Board, 9 Cir., 196 F.2d 411; National Labor Relations Board v. Gaynor News Co., Inc., 2 Cir., 197 F.2d 719; National Labor Relations Board v. United Hoisting Co., Inc., 3 Cir., 198 F.2d 465.

Section 8(a)(1) and (3) of the National Labor Relations Act, as amended by the Labor Management Relations Act of 1947, 29 U.S.C.A. § 158(a)(1) and (3), provides that it shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of their rights of self-organization, under Section 7, 29 U.S.C.A. § 157, to bargain collectively through representatives of their own choosing, or to refrain therefrom, "by discrimination in regard to hire or tenure of employment or any term or condition of employment".

Section 8(b) (2) and (1) (A) of the Act provides that it shall be an unfair labor practice for a labor organization or its agents: to cause or attempt to cause the employer to discriminate against the employee in violation of Section 8(a)(3); and to restrain or coerce employees in the exercise of their rights of self-organization under Section 7.

█ These sections of the Act are violated if an employer and a union execute, maintain, or enforce a closed shop agreement. National Labor Relations Board v. Electric Vacuum Cleaner Co., Inc., 315 U. S. 685, 62 S.Ct. 846, 86 L.Ed. 1120; National Labor Relations Board v. Lloyd A. Fry Roofing Co., 9 Cir., 193 F.2d 324. Further, the prohibitions contained in these sections of the Act are violated if the employer and the union arrange to agree to give union employees priority in employment, whether through the device of requiring referral by the union, or otherwise. National Labor Relations Board v. Whittenberg Construction Co., 6 Cir., 200 F.2d 157; National Labor Relations Board v. Jarka Corp. of Philadelphia, 3 Cir., 198 F. 2d 618; National Labor Relations Board v. Arthur G. McKee & Co., 5 Cir., 196 F.2d 636; Red Star Express Lines v. National Labor Relations Board, 2 Cir., 196 F.2d 78.

Respondent company contends that the Board's findings are not sustained by substantial evidence. It says that while it sought experienced men from the Local, such procedure constitutes no violation of the Act; that the company alone decided whom to hire or fire; that, on many occasions, it replaced men referred to it by the Local; that it "processed all applicants completely on its own;" that it was free to go anywhere to procure men; that no preferential treatment was accorded to union men in referrals or employment; and that it is admitted by petitioner that there were as many men actually employed upon the project who did not belong to locals as those who did belong to locals. Respondent company submits that the precise issue which requires determination is whether or not the mere use of a local as a source of labor supply upon a referral basis, where admittedly there is no evidence of discrimination whatsoever against any individual applicant because of his union or nonunion status, is a violation of the law;

and it contends that the answer, under the decisions of the court, is that under such circumstances, there is no violation of the law, and, accordingly, none by respondents in this case.

In support of its contention, respondent company relies upon the authority of Del E. Webb Construction Co. v. National Labor Relations Board, 8 Cir., 196 F.2d 841, 845, which, it is claimed, was decided on facts almost identical to the case at bar. There, the court stated that the action of a union entering into an arrangement which calls for an employer to discriminate against some employees in such a way as to encourage union membership constituted an unfair labor practice. It appeared that the company in that case would call the union, which furnished men with "referral slips" or "work orders;" and the company's general superintendent had verbally agreed to the union's working rules which provided that all employees must, after being hired, report to the steward before starting to work. The court held, however, that the Board's findings that the company had agreed to hire only union men was not sustained by substantial evidence; that the fact that the union's working rules provided that a man, before starting work, was required to report to the steward was not proof that the company had agreed to employ only union men; and that it further appeared that the company had refused to accede to the union's request to employ men only through referral by the union. The court said that if an employer "does not expressly agree to hire only union labor through the union hall, he cannot be said to be encouraging union membership by hiring through the hall since he retains his right to hire non-union labor at the jobsite." Between this case and the case before us there appear certain distinctions. There is, here, substantial evidence to sustain the Board's finding that the company had entered into a nationwide contract with the International, which was in effect at the time the hiring took place in this case, to employ only members of the union in good standing, and that it carried out this agreement in its hiring of men by accepting the local area agreement and by conforming to the hiring practices in force between the Local of the International and the construction contractors in the area in question; and, further, that all hiring by respondent company in the present case was carried on by referral from the union, no men being employed directly by the company at its offices or at the job site.

■ The action of an employer in hiring workmen through a union, by means of referrals from the union, is held not to violate the Act, absent evidence that the union unlawfully discriminated in supplying the company with personnel. National Labor Relations Board v. Swinerton, 9 Cir., 202 F.2d 511. In the instant case, there was no unlawful discrimination against any individual employees, because, in spite of the fact, that it was the normal policy of the union to give preference, first, to its own members, so many workmen were required for this gigantic building project that everyone who applied was accepted and employed if qualified for the work, with a few exceptions not here relevant.

■ As to the employment applications utilized by the company, requiring a disclosure of the applicant's union affiliations, it is well settled that the use of such forms is a type of interrogation which is no less violative of the Act than oral interrogation concerning union membership and activities; Texarkana Bus Co., Inc. v. National Labor Relations Board, 8 Cir., 119 F.2d 480; and this is especially so in the present case where the applications for employment were utilized by the company as part of its hiring arrangements. See National Labor Relations Board v. Ford, 6 Cir., 170 F.2d 735. National Labor Relations Board v. Tennessee Coach Co., 6 Cir., 191 F.2d 546, relied upon by respondent company, is readily distinguishable from the case before us because of the fact that here, a systematic inquiry was carried out by means of application forms for employment, directed to every applicant, requiring him to disclose to the union in question and to the company his membership in any union; and such application forms were a part of the hiring arrangements between the union and the company.

■ The fact that there was in existence at the time the union referrals were made the 1948 nationwide contract between respondent company and the International, providing that the company would employ only union members in good standing, if the union could promptly furnish such workmen; that the company, in dealing with the union on such referrals, considered itself bound by the terms of such contract and an area contract containing the same terms; that the applications for employment requiring workmen to disclose the name of any union in which they held membership were utilized by the union and the company as part of their hiring arrangements—all the foregoing circumstances sustain the conclusions of the Board that respondent company interfered with the rights of the employees to self-organization, and, by discrimination in regard to the conditions of employment, encouraged membership in the union.

■ The agreement and hiring practices entered into and carried out by the respondent company and the union in this case are in contravention of the Act, and whether the employees were actually coerced or not, the execution of such an agreement, without more, tends to encourage membership in a labor organization and constitutes an unfair labor practice. Red Star Express Lines v. National Labor Relations Board, 2 Cir., 196 F.2d 78, 81. Hiring practices, requiring the company to give preference to union members in hiring applicants for employment, are violative of the Act, although there is no showing that any specific employee was actually discriminated against as a result of such practices. Red Star Express Lines v. National Labor Relations Board, supra; National Labor Relations Board v. National Maritime Union of America, 2 Cir., 175 F.2d 686; International Union, United Mine Workers v. National Labor Relations Board, 87 U.S. App.D.C. 230, 184 F.2d 392.

■ The findings of the Board that the company violated Section 8(a)(3) and (1) by maintaining, continuing in existence, and enforcing illegal hiring agreements and arrangements; that the respondent unions violated Section 8(b)(2) and (1)(A) by engaging in and causing the company to engage in such conduct; and that the company violated Section 8(a)(1) by requiring applicants for employment to disclose their union affiliations, were sustained by substantial evidence on the record as a whole.

■ Respondent company's contention that its elimination of the question concerning union affiliations from the application form, subsequent to the hearing before the Board, constitutes a defense to enforcement of that portion of the order which requires it to cease and desist from such interrogation of employees, is not valid, in the light of our holding that the abandonment by an employer of a practice condemned by a statute does not cause a controversy under the National Labor Relations Act to become moot. National Labor Relations Board v. Oertel Brewing Co., 6 Cir., 197 F.2d 59.

■ Respondent company contends that there was no substantial evidence that it had followed any unlawful hiring practices at any projects other than Paducah; and with this contention, we agree. A trace or wisp of evidence, a single, vague, and inconclusive reply by a single witness that could reasonably be construed in various ways, either in support of, or contrary to, the Board's contention, is not substantial evidence upon which to base a finding that respondent company's employment activities outside of Paducah throughout the country, were discriminatory and illegal. See Del E. Webb Construction Co. v. National Labor Relations Board, 8 Cir., 196 F. 2d 841, 846.

In accordance with the foregoing, the order of the Board is modified by deleting the requirement that respondent company post the copies of the notice required by the Board, at places or projects other than the project at Paducah, Kentucky; and a judgment will be entered granting enforcement of the order of the Board, as above modified.

On Respondent's Petition for Modification of Order and Judgment

The above cause coming on to be heard on petition by respondent to modify the order and judgment of this court in con-

formity with the opinion heretofore filed, and the answer thereto filed on behalf of the National Labor Relations Board, and the court being duly advised,

Now, therefore, it is ordered, adjudged, and decreed as follows:

**1.**

The respondent, F. H. McGraw and Company, its officers, agents, successors, and assigns, shall, at its project near Paducah, Kentucky:

1. Cease and desist from:

(a) Including in its membership applications any question concerning membership in labor organizations or otherwise interrogating employees or applicants for employment regarding their union affiliation.

(b) Requiring employees or applicants for employment to obtain clearance or job referrals from International Union of Operating Engineers, A. F. L., or its Local 181, as a condition of employment, except under a nondiscriminatory arrangement permitted by Section 8(a) (3) of the Act, 29 U.S.C.A. § 158(a) (3).

(c) Performing, enforcing, or giving effect to the closed-shop or preferential hiring provisions of its current written collective bargaining agreement with International Union of Operating Engineers or of its current oral collective bargaining agreement or understanding with Local 181 of said International, or entering into or enforcing any extension, renewal, modification, or supplement thereof, or any superseding agreements with the said labor organizations, containing union-security provisions, except as authorized by the proviso to Section 8(a) (3) of the Act.

(d) In any like or related manner, interfering with, restraining, or coercing its employees or applicants for employment in the exercise of their right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, or to refrain from any or all such activities, except to the extent

that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment, as authorized in Section 8(a) (3) of the Act.

2. Take the following affirmative action:

(a) Post at its office at its project near Paducah, Kentucky, copies of the notice hereto attached marked Appendix A. Copies of said notice, to be furnished by the Regional Director for the Ninth Region, shall, after being duly signed by the respondent company's representative, be posted by the respondent company immediately upon receipt thereof and maintained by it for sixty consecutive days thereafter, in conspicuous places, including all places where notices to employees are customarily posted. Reasonable steps shall be taken by the respondent company to insure that said notices are not altered, defaced, or covered by any other material.

(b) Notify the Regional Director for the Ninth Region in writing, within ten days of the receipt of this order, what steps it has taken to comply herewith.

## APPENDIX A

### Notice To All Employees

Pursuant To The Decree And Order Of The United States Court Of Appeals Enforcing An Order

We hereby notify our employees that, at our Paducah, Kentucky, project:

WE WILL NOT interrogate our employees or applicants for employment concerning their union affiliations.

WE WILL NOT require employees or applicants for employment to obtain clearance or job referrals from International Union of Operating Engineers, A.F.L., or its Local No. 181, as a condition of employment, except under a nondiscriminatory arrangement permitted by Section 8(a) (3) of the Act.

WE WILL NOT perform, enforce, or give effect to the closed-shop provisions of our contract with the International Union of Operating Engineers, dated July 29, 1948, and/or the preferential hiring provisions of our oral agreement or understanding with Local No. 181 of said International

adopting the standard form of collective bargaining agreement of said Local, or enter into or enforce any extension, renewal, modification, or supplement thereof, or any superseding agreements with the said labor organizations containing union-security provisions, except as authorized by the proviso to Section 8(a) (3) of the Act.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce our employees in the exercise of right guaranteed by Section 7 of the Act. 29 U.S.C.A. § 157.

All our employees are free to become, remain, or to refrain from becoming or remaining, members of the above-named unions, or any other labor organization, except to the extent that this right may be affected by an agreement in conformity with Section 8(a) (3) of the Act. We will not discriminate in regard to hire or tenure of employment or any term or condition of employment against any employee or applicant for employment because of membership in or lack of membership in any such labor organization.

F. H. McGraw and Company
(Employer)

Dated ———— By ——————— ——————
(Representative)   (Title)

This notice must remain posted for 60 days from the date hereof, and must not be altered, defaced, or covered by any other material.

On Petition of N.L.R.B. for Rehearing

█ The above cause coming on to be heard upon the petition of the National Labor Relations Board for a rehearing on the ground that the decree of the court should provide, as in the order of the National Labor Relations Board in the above cause, that respondent should post notices, as set forth in the order of the Board, at all projects now being operated by respondent in addition to posting such notices at its Paducah, Kentucky, project, on the ground that such unfair labor practices may be fairly anticipated from the course of respondent's conduct in the past, and that there is danger that such practices will be committed by respondent in the future; and it appearing that respondent is an interna-

tionally known engineering company that has been and is engaged in many vast engineering projects throughout this country, and that prior to the charge made in this case, respondent had never been charged by anyone with committing any unfair labor practice of any kind; and it appearing to this court, upon the consideration of the foregoing circumstances, that in the light of the decision of this court, respondent is not likely to commit, willfully and flagrantly, such unfair labor practices in the future.

Now, therefore, it is ordered, adjudged, and decreed that the petition for rehearing be and is hereby denied.