**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CARPENTERS LOCAL UNION NO. 1028, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL, Respondent.**

**No. 5165.**

United States Court of Appeals Tenth Circuit. March 7, 1956.

Martin Sacks, Kansas City, Mo. (Theophil C. Kammholz, David P. Findling, Marcel Mallet-Prevost, Samuel L. Singer and William J. Avrutis, Washington, D. C., on the brief), for petitioner.

Wayne D. Williams, Denver, Colo. (Francis X. Ward, Indianapolis, Ind., and William A. McGowan, Indianapolis, Ind., on the brief), for respondent.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This is a petition to enforce an order of the National Labor Relations Board, and the only question is whether the unfair labor practices found are barred by Section 10(b) of the Act, 29 U.S.C.A. § 160(b), which provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made * * *."

The Board found that the respondent Union had violated Section 8(b) (2) and (1) (A) of the Act, 29 U.S.C.A. § 158(b) (1) (A), (2), by entering into an alleged illegal closed shop agreement with an employer, thereby causing the employer to adopt a discriminatory hiring policy; and Section 8(a) (2) and (b) (1) (A) by causing the employer to discriminatorily refuse to hire N. W. and Tommy Black, two prospective employees, because they had not been cleared for the job by the Union.

These findings are based upon unchallenged subsidiary findings of the Board to the effect that in June 1953, employer Dennehy, entered into an agreement with the Union for the hiring of workmen on a construction project at Ardmore, Oklahoma, under the terms of which only Union workmen would be employed on the job by referral from the respondent Union. On September 17, 1953, N. W. Black came to the job site and applied to Foreman Chapman for work for himself and his son, Tommy, as carpenters. Knowing of Black's qualifications, Chapman told him that he wanted him on the job but he would have to clear through the respondent Union. On September 21, both Blacks cleared their books through the Union, and on the 25th they explained to the Union Business Agent that jobs awaited them if they could get cleared. They were told by the Agent that there was a waiting list of about thirty employees. The Blacks then went to the job site and told Chapman of their conversation with the Business Agent. They were referred to the Superintendent of the project who stated that he could, under the rule, call for them by name as foremen. On the next morning, Saturday the 26th, Chapman called the Agent at his home, asking that the Blacks be sent out on the job as foremen. The Board found that the Agent agreed to the request. The Blacks were

shown around the project and told what they would be expected to do upon reporting for duty Monday morning.

When, on Monday morning, the 28th, the Blacks went to the Local Union office for their referral slips, they met the Union Agent coming out of the door, who told them that as soon as he could get out to the job there would be many more carpenters on the waiting list as he was going to shut down the job. When the Blacks told Chapman of the result of their conversation with the Agent, Chapman said that he was sorry but that he had done all he could. While this conversation was taking place, the Union Agent came to the job and called all of the workmen off the job, apparently because Chapman had refused to hire two men whom the Agent had sent out to the job instead of the Blacks.

The Board's order required the Union to cease and desist from imposing a closed shop agreement on the employer and to affirmatively notify the two Blacks in writing that they would not be denied employment because of membership or nonmembership in the Union, except as authorized by Section 8(a) (3) of the Act; and that the Union had no objection to the employment of the Blacks. The Union was also required to make the Blacks whole and post the customary notices.

The Union does not challenge the findings of the Board with respect to the unfair labor practices, but contends that it occurred on September 17, 1953, when the Blacks applied for employment and were told by the employer that he could not hire them without clearance or referral from the Union. The imposition of the closed shop is said to constitute the unfair labor practice complained of; that it was complete and clear cut at that time, and a complaint filed more than six months thereafter is barred by the statute. The complaint was filed on March 25, 1954, and served on respondent March 26, 1954, and if the unfair labor practice occurred prior to Saturday, September 26, 1953, it is barred.

The Union relies upon N. L. R. B. v. Pennwoven, Inc., 3 Cir., 194 F.2d 521, where the unfair labor practice consisted of refusal of the employer to reinstate three employees because of their union affiliations. In these circumstances, the Third Circuit held that the unfair labor practice was complete upon the refusal to reinstate, and the failure to rehire was not a continuing unfair labor practice. In another subsequent case, N. L. R. B. v. United Hoisting Company, 198 F.2d 465, the Third Circuit had a situation under a closed shop agreement. As against the contention that the unfair labor practice dated back to the closed shop agreement more than six months from the date of the complaint, the court observed that the Board's finding of unfair labor practice was founded upon the discharge of the employee in the course of the enforcement of the illegal closed shop agreement, and that the discharge being within the six months period prescribed by Section 10(b), it was not barred. The court drew a distinction between that case and its Pennwoven case, and following Katz v. N. L. R. B., 9 Cir., 196 F.2d 411, held that the continuous enforcement of the illegal hiring agreement within six months prior to the filing of the complaint, constituted the unfair labor practice, and that such practice was therefore not barred. And see N. L. R. B. v. F. H. McGraw Co., 6 Cir., 206 F.2d 635; N. L. R. B. v. Gaynor News Co., Inc., 2 Cir., 197 F.2d 719.

Our facts are not decisively different. Here the closed shop agreement was entered into in June. And, while it may be said to have been discriminatorily enforced on September 17th when the Blacks first applied for a job and were told that they would have to clear through the Union, it was also enforced on the 28th when they were refused job clearance and the strike was called to enforce the illegal agreement. We therefore hold that the complaint is within the statutory period of limitations and the order of the Board will be enforced.

HUXMAN, Circuit Judge (dissenting).

I would refuse to enforce the order of the Board on the ground that the action was barred by Section 10(b) of the Act, 29 U.S.C.A. § 160(b), because not brought within six months from the commission of the unlawful act. There were two violations of the Act as found by the Board. One was the unlawful agreement between the Dennehy Construction Company and the Union under which no one was to be employed who had not been cleared by the Union. Such agreement constituted a violation of the provisions of the Act, participated in by both the Dennehy Construction Company and the Union. That was a continuing violation dating from the date of the execution of the agreement. An action could have been brought by anyone aggrieved thereby at any time after the date of its execution and so long as that agreement remained in force. That was not, however, the violation complained of by the Blacks upon which this proceeding is predicated. They complain of the denial of their right to employment when they applied for employment because of such unlawful agreement.

When the Blacks applied for employment on September 17, the employer could have refused to employ them for any reason other than because of the unlawful agreement. There were jobs available for which they were qualified. They were needed and Chapman, Dennehy's foreman, wanted them; he promised them employment as soon as they could secure clearance from the Union. In other words, he refused to employ them at that time because of the unlawful agreement. This he could not do and this conduct on his part constituted a violation of their rights under the Act. This violation occurred on September 17. The subsequent acts of September 21, 25, 26 and 28 were but continuing steps in the denial of their right to employment because of the unlawful agreement. Both the Dennehy Construction Company and the Union were guilty of violations of the Act on September 17. Dennehy could no more deny employment to the Blacks until the unlawful agreement was complied with than the Union could insist that employment be denied until the conditions of the contract had been complied with. Since more than six months elapsed after the Blacks were denied employment on September 17 and before they began this action, the action is barred.

The facts in this case are indistinguishable to me from those in N. L. R. B. v. Pennwoven, Inc., 194 F.2d 521, in which the Third Circuit denied enforcement of an order because of the statutory limitation imposed by the Act. Neither do I find anything in the later case of N. L. R. B. v. United Hoisting Company, 198 F.2d 465, by the Third Circuit, which requires a different holding. No unlawful agreement such as we have here was involved in the Pennwoven case. The only question there was whether the right of the workers to be recalled was violated more than six months prior to the institution of the action by the Board. That was the identical question involved in the United Hoisting Company case. The only difference between the two cases was that in the United Hoisting Company case the employees were unlawfully discharged as a result of an unlawful agreement between the employer and the Union, and the only question was whether such unlawful discharge pursuant to the agreement occurred within the statutory time for the institution of an action. All the court held was that the running of the statute began from the date of the unlawful discharge under the agreement and not from the date of the execution thereof. This is the identical question we have here. The difference in the result of the two cases is occasioned by the fact that in the United Hoisting Company case the unlawful discharge of the employees involved caused by the unlawful agreement was only three days prior to the institution of the action, while in our case I construe the violation of the

Blacks' rights resulting from the unlawful agreement to have occurred on the 17th day of September, more than six months before they took steps to institute this action.