**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**Joseph T. STRONG d/b/a Strong Roofing and Insulating Co., Respondent.**

**No. 20762.**

United States Court of Appeals Ninth Circuit.

July 14, 1967.

Rehearing Denied Jan. 16, 1968.

Certiorari Denied Jan. 29, 1968.
See 88 S.Ct. 853.

Arnold Ordman, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Burton Raimi, Atty., N.L.R.B., Washington, D. C., Ralph E. Kennedy, Director, N.L.R.B., Los Angeles, Cal., for petitioner.

Alfred C. Phillips, O'Melveny & Myers, Brundage, Hackler & Roseman, Los Angeles, Cal., for respondent.

Before HAMLEY and JERTBERG, Circuit Judges, and WHELAN, District Judge.

WHELAN, District Judge:

This case is before the Court on the petition of the National Labor Relations Board to enforce its order against Respondent Joseph T. Strong d/b/a Strong Roofing and Insulating Co.

The Board's decision and order are reported at 152 N.L.R.B. No. 2. This Court has jurisdiction of the matter.

The Board found that respondent, by refusing to sign and honor a collective bargaining agreement negotiated on behalf of respondent by a multi-employer association to which respondent belonged and through which respondent participated with the Union, has refused to bargain and has engaged in unfair labor practices within the meaning of Section 8(a) (5) and Section 8(a) (1) of the National Labor Relations Act, as amended, 29 U.S.C. § 158(a) (5) and § 158(a) (1).

Respondent was ordered by the Board to cease and desist from refusing to recognize the Union as the representative of respondent's employees in the multi-employer bargaining unit and refusing to honor the 1963–1967 contract between the Union and the Association and from, in any like or related manner, interfering with, restraining or coercing his employees in the exercise of their statutory rights. Respondent was also ordered to forthwith execute and honor the 1963–1967 contract and to pay to the appropriate source any fringe benefits provided for in the above described contract, as well as to post the usual notice and give notification of the posting of the notice to the representative of the Board within the time provided in the order.

While before the Board respondent contended that the Board did not have jurisdiction to hear the complaint against respondent in that respondent was not engaged in a business affecting commerce within the meaning of Sections 2(6) and 2(7) of the National Labor Relations Act, as amended, and has not engaged in conduct affecting commerce over which the Board has jurisdiction under Section 10(a) of said Act, the respondent has abandoned such contention before this Court.[1]

Resisting the petition for enforcement, respondent first argues that the unfair

1. In any event, the Board found that the operations of respondent do affect commerce within the meaning of said Sections 2(6) and 2(7) of the Act; and such finding is supported by substantial evidence and such finding is correct.

labor practice charge was filed more than six months following respondent's refusal to execute the multi-employer contract.

The unfair labor practice charge was filed on June 3, 1964. On October 18, 1963, the Union representative contacted respondent's wife who managed the office of respondent in an attempt to have the 1963–1967 multi-employer contract with the Union signed. Respondent's wife told the representative that respondent had withdrawn from the Association and therefore would not sign. The following day she told the Union representative that she had spoken to respondent, who had confirmed his intent to withdraw from the Association, and that he therefore would not sign the agreement. Again on December 10, 1963, respondent's wife said respondent would not sign the contract because he no longer employed any Union members. Finally in April 1964 respondent was again contacted by a Union representative, at which time respondent refused to sign the contract for "economic reasons".

While it is true that the first refusal to sign the contract in October 1963 was barred as the basis of an unfair labor practice charge by Section 10(b) of the Act as being more than six months prior to the date of the filing of the unfair labor practice charge, and while it is true that had nothing further occurred thereafter respondent's contention would be well taken, here there were further refusals within a period of six months prior to the date of filing of the charge.

■ The obligation of respondent to bargain collectively with the Union was a continuing one. N.L.R.B. v. White Construction & Engineering Co. (5th Cir. 1953) 204 F.2d 950, 952–953. Respondent had the obligation to bargain collectively and to execute the contract when the Union requested him so to do. Section 8(d) of the Act, Title 29, U.S.C. § 158(d). This obligation extends to the execution of a bargaining agreement executed by an employers Association of which an employer is a member with the

Union. N.L.R.B. v. Jeffries Banknote Co., (9th Cir. 1960) 281 F.2d 893, 896.

Respondent's reliance on Local Lodge No. 1424, I.A.M. v. N.L.R.B., 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832, (1960) is without merit. In Local Lodge No. 1424, supra, the Supreme Court said at 362 U.S. pp. 416–417, 80 S.Ct. at 826:

"[I]n applying rules of evidence as to the admissibility of past events, due regard for the purposes of § 10(b) requires that two different kinds of situations be distinguished. The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose Section 10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of earlier unfair labor practices is not merely 'evidentiary' since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful."

■■ In the instant case each of the two refusals of respondent to sign the contract within the six months limitation period in and of itself constitutes, as a substantive matter, unfair labor practice. Therefore, the Board was entitled to consider the refusal of respondent in October 1963 to sign the contract as evidence to shed light on the true character of the refusals occurring within the limitation period. International Union, United Automobile, etc. Workers of America, AFL-CIO v. N.L.R.B., (D.C. Cir. 1966) 363 F.2d 702, 706–707.

Respondent next argues that the Union was estopped by its conduct during the period commencing August 1963

and ending June 3, 1964, from contending that it did not consent to the respondent's withdrawal from the multi-employer unit and release from the obligations of the multi-employer contract.

The examiner's findings concerning the question of estoppel, adopted by the Board, may be summarized briefly as follows:

Respondent is an individual engaged in the roofing of residential and commercial buildings. He joined the Roofing Contractors Association of Southern California, Inc. (hereafter the Association) about 1949 and at one time served as its president. He had for many years been a regular member as defined in the Association's by-laws.

The Association was formed for the purpose, inter alia, of negotiating labor contracts with Roofers Local 36, United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association (hereafter Union). By-laws of the Association provide for regular members and also for associate contractor members. Regular members are contractors who operate union shops and who, under the by-laws of the Association, are bound by the collective bargaining contract negotiated by the Association. Associate contractor members are contractors who operate non-union shops and who are not covered by the Association's collective bargaining agreement.

As a regular member of the Association, respondent signed the August 15, 1960, to August 14, 1963, agreement with the Union and the Association. During such contract term and on January 23, 1962, respondent wrote the Union requesting termination of the contract at the earliest possible time. He received no response to such letter. There is no evidence that such letter was ever transmitted to the Association. However, under the terms of such contract, respondent could not terminate such agreement as such contract was for a fixed period. Despite his letter he continued to observe the contract and paid fringe benefits to the Union Roofers Trust Account.

Prior to the start of contract negotiations with the Union in March of 1963, the Association mailed authorization proxies to its regular members, including respondent, for their information only. Whether or not the regular members sign proxies they are bound by any agreement reached in the negotiations. Respondent neither signed nor returned the proxy; respondent testified that in the past he had not always signed the proxies. The negotiations between the Union and Association continued until August 14, 1963, when the terms of a new four-year contract were agreed upon; the contract was ratified by the Union membership on August 17, 1963, and had an effective date of August 15, 1963. During the negotiations the Association informed all regular members, including respondent, of progress and invited them to attend two open negotiating sessions.

Respondent did not notify the Association that he was withdrawing as a regular member of the Association prior to the execution of the 1963–1967 contract.

Though regular members are automatically bound by the negotiated collective bargaining agreement, it has been the past practice of the Union to have each of the members sign a copy of the contract.

On August 20, 1963, respondent wrote the Joint Labor Relations Board, a grievance board composed of contractor and Union representatives, requesting termination of the contract and the refund of his security deposit pursuant to the Master Agreement dated August 15, 1963. Upon receipt of this letter the Joint Labor Relations Board, without further action, turned it over to the Association's representative.

In September 1963 respondent telephoned the Association and requested that his status be changed from that of a regular member to that of an associate contractor member, but he paid the higher regular member dues in October, November, and December of 1963 and paid fringe benefits to the Union Roofers Trust Fund in September and

October of 1963. Under the terms of the 1963–1967 contract, respondent could not unilaterally terminate the contract.

In December 1963 the Association credited his account with the difference between the regular and associate membership dues for October, November, and December of that year, and in January 1964 returned to him his deposit given as security to the Association to insure payment of wages and fringe benefits by him. Prior to the return of the deposit by the Association, he had not received an answer to his August 20, 1963, letter to the Joint Labor Relations Board requesting termination of the contract.

In the three contacts of respondent by the Union in October and December of 1963, and in April of 1964, the Union representatives merely asked respondent to sign the agreement and did not state that respondent was bound by the Association-wide master contract. What did occur on those three occasions was the request by the Union representatives that respondent sign an individual contract after the master agreement had been negotiated precisely as respondent had been requested with respect to earlier contracts so to sign and as other regular members of the Association were requested both with respect to the 1963–1967 contract and earlier contracts.

The trial examiner found that the failure of the Union representatives to tell respondent that he was bound by the master contract was not evidence of a waiver and the Board adopted such finding.

The reviewing power of this Court over orders of the Board is set forth in Section 10(f) of the Act, which states:

"[T]he findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive."

The standard of review set forth in that provision is elaborated upon in Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951) and its companion case, N.L.R.B.

v. Pittsburgh S.S. Company, 340 U.S. 498, 71 S.Ct. 453, 95 L.Ed. 479 (1951). If the findings are not supported by substantial evidence on the record when considered as a whole, it is our duty to set aside and refuse enforcement of the order of the Board. Universal Camera Corp. v. N.L.R.B., supra; N.L.R.B. v. Isis Plumbing and Heating Co. (9th Cir. 1963) 322 F.2d 913; Lozano Enterprises v. N.L.R.B. (9th Cir. 1966) 357 F.2d 500.

Under the rationale expressed in Universal Camera, supra, it is our duty in determining the substantiality of evidence supporting a Labor Board decision to take into account contradictory evidence or evidence from which conflicting inferences could be drawn.

"The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera, supra, 340 U.S. at 488, 71 S.Ct. at 464.

We do not find the inferences drawn from the record by the trial examiner to be unreasonable.

■■ In our view the findings of the Board are supported by substantial evidence in the record considered as a whole, and are therefore conclusive upon us.

■■ However, respondent's contention that the Board erred in including in its order a requirement that respondent pay to the appropriate source any fringe benefits provided for in the contract between the Association and the Union is well taken. In general, the Board has no power to adjudicate contractual disputes. N.L.R.B. v. Hyde, (9th Cir. 1964) 339 F.2d 568, 572; United Steelworkers of America, AFL-CIO v. American International Aluminum Corp. (5th Cir. 1964) 334 F.2d 147, 152. Here the unfair labor practice was the refusal to bargain by refusing to execute the contract. The order of the Board requiring the payment of fringe benefits to the appropriate source is an order to respondent to carry out provisions of the contract and is beyond the power of the Board. See N.L.R.B. v. Hyde, supra, 339 F.2d at pp. 572–573. Cf. N.L.R.B. v. George E.

Light Boat Storage, Inc., (5th Cir. 1967) 373 F.2d 762. Therefore, the order of the Board is modified to eliminate therefrom paragraph 2(b) requiring that respondent "pay to the appropriate source any fringe benefits provided for in the above described contract" and to remove from the required notice to be posted that paragraph which reads "We will make whole the appropriate sources for any unpaid fringe benefits provided in the above contract."

As so modified, the order of the Board will be enforced.