**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**FIELD AND SONS, INC., Respondent.**

**No. 71–1398.**

United States Court of Appeals, First Circuit.

Heard May 2, 1972.

Decided May 24, 1972.

Michael F. Walsh, Attorney, with whom Peter G. Nash, Gen. Counsel, and Marcel Mallet-Prevost, Asst. Gen. Counsel were on the brief, for petitioner.

William Field, pro se.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

The Board seeks enforcement of an order against respondent employer for violation of sections 8(a) (5) and (1) of the National Labor Relations Act, 29 U. S.C. § 158(a) (5) and (1), in that it refused to sign a collective bargaining agreement negotiated by a multi-employer bargaining association to which respondent allegedly belonged.

The trial examiner found that for some years prior to 1969 respondent Field & Sons, Inc., a contractor employing several painters, had been a member of an informal association [1] of painting contractors which existed almost exclusively to meet with the union [2] on contract negotiations. In April 1969 the association and the union began negotiations for a new contract to replace a three-year pact expiring in June 1969. Field had participated in the negotiations leading to the existing agreement and was a signatory to it. When the April negotiations began it again participated as a member of the association, both in meetings of the association alone and with the union. The union ultimately struck, and according to respondent, its four union employees resigned from the union and left the area, and were never again available for employment. While negotiations were in process and one week before agreement was reached, respondent orally resigned from the association.[3] The Board held the resignation to be untimely, and hence ineffective as a matter of law, and therefore held respondent to an obligation to sign the agreement reached the following week. The Board's position, which it asks us to support, is that withdrawal from a multi-employer bargaining unit, once negotiations have begun, is without validity regardless of reason, or good faith, or lack of adverse effect upon the bargaining process.

This rigid rule was first judicially examined and enforced in NLRB v. Sheridan Creations, Inc., 2 Cir., 1966, 357 F. 2d 245, Chief Judge Lumbard dissenting. The court held that while "good faith withdrawal of a small unit might in practice have minimal or no effect," nonetheless "the potential for disrup-

---

1. Union Painting Contractors of the North Shore.

2. Massachusetts North Shore Painters Local 1898 of the Brotherhood of Painters, Decorators and Paperhangers of America, AFL-CIO, of Salem, Massachusetts.

3. The Board's opinion assumed that the oral form of resignation was consistent with the accepted method of leaving the association, and was understood as effective by it. The association head testified that other members had resigned some years earlier merely by saying "I've had it," and walking out.

tion" is sufficient to excuse an inflexible rule. 357 F.2d at 248. The individual employer's freedom of association must, in other words, be sacrificed to possible consequences. We gather this meant possible consequences to the union. *Cf.* The Kroger Co., 1964, 148 N.L.R.B. 569; Ice Cream Frozen Custard Employees, 1964, 145 N.L.R.B. 865; C & M Constr. Co., 1964, 147 N.L.R.B. 843. Why the employer owed a duty to the union overriding its own interest even when acting in good faith, the Board did not say.[4]

We are led to make a singular comparison. If a union member, who does have a contract with the union, as distinguished from an employer engaged in multi-employer negotiations seeking to make one, withdraws from the union during a strike which, as a member, he voted for, the Board takes the position that he is free to do so. NLRB v. Granite State Joint Board, 1 Cir., 1971, 446 F.2d 369, cert. granted 405 U.S. 987, 92 S.Ct. 1247, 31 L.Ed.2d 452, 1972. Arguably it is even clearer that an employer, at a time that no commitments had been made, should be free to proceed on its own, at least absent some showing of detriment or of bad faith.

In *Granite State*, it being assumed that at least some of the employees not only voted for the strike, but for the penalty for strike-breaking, we held that such employees could not avoid the effect of their action by resigning from the union. In petitioning for certiorari the Board argued as follows: "While an employee may be sympathetic to a strike when the vote is taken, events occurring thereafter—such as the hardship to his family, or the employer's ability to hire permanent replacement for the strikers —may lead him to change his mind about the strike and to desire to return to work." If an employee who has agreed to a strike can withdraw, we do not see why an undertaking to engage in multi-employer bargaining is an irrevocable agreement under all circumstances.

We need not, however, resolve this dilemma because we agree with respondent that this case is barred by the six-month statute of limitation, section 10(b) of the Act. 29 U.S.C. § 160(b). It is true that the unfair labor practice charge was filed shortly after a declination by respondent to execute the contract. This was not, however, within six months of the time that its obligation, if it had one, arose. The multi-party agreement was reached in June 1969 and on July 10, 1969 respondent was asked to sign, and declined. It was too late to ask it again in July 1970, and then file a charge. Local Lodge No. 1426, Int'l Ass'n of Machinists, AFL–CIO v. NLRB, 1960, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832.

We realize that in NLRB v. Strong, 9 Cir., 1967, 386 F.2d 929, the court, on very similar facts, stated that the second refusal to sign the contract "constitute[s], as a substantive matter, unfair labor practice." 386 F.2d at 931. Its sole authority was International Union, United Automobile Workers v. NLRB, 1966, 124 U.S.App.D.C. 215, 363 F.2d 702, which, in turn, cited no authority, and, indeed, offered little discussion. We do not think, in terms of a statute of limitations, that to label an act as an unfair labor practice should have substantive consequences any more than, for example, using the term breach of contract. If a defendant owes a sum of money, he may be said to be guilty of a breach of contract every time he refuses to pay. But if, after the statute has run on his first refusal, he is asked and refuses again, and a new cause of action is held to arise, although the facts are different we believe it would offend the principle described in *Machinists Local*.

"[T]he Board's position would withdraw virtually all limitations protec-

---

4. The respondent in this case is not being charged with an unfair labor practice for refusal to negotiate. A withdrawal from the multi-employer association accompanied by a declination to bargain individually on demand, would present an entirely different matter.

tion from collective bargaining agreements attacked on the ground asserted here. For, once the principle on which the decision below rests is accepted, so long as the contract—or any renewal thereof—is still in effect, the six-month period does not even begin to run." 362 U.S. at 425, 80 S.Ct. at 831.

We distinguish a failure to bargain, or breach of a general duty imposed by the Act, as to which each refusal (provided there is a refusal, *cf.* N.L.R.B. v. Los Angeles Yuma Freight Lines, 9 Cir., 1971, 446 F.2d 210) may be a new unfair labor practice, and a failure to perform a particular act, such as to make a particular payment, or to execute a particular agreement. Were the Board's approach correct a new demand for payment made upon a contract debtor after the statute had run, which waives the statute if a new promise is made, would equally waive it if there was a new refusal. *Cf.* 1 Williston, Contracts §§ 160–162.

We note the following cases which indicate the error in the Board's treatment of section 10(b) six months' limitation. Puerto Rico Tel. Co. v. NLRB, 1 Cir., 1966, 359 F.2d 983, 987–88 (subcontracting of union's work, complained of after six months' continuance) ; Tennessee Products & Chem. Corp. v. NLRB, 6 Cir., 1970, 423 F.2d 169, 180 (contracts allegedly improperly supporting another union remaining in effect after six months). As the court said in NLRB v. Los Angeles Yuma Freight Lines, ante, where more than six months before the matter complained of the employer allegedly repudiated a contract with the union and was then charged with non-performance.

"[T]o permit litigation as to the legal significance under the Act of those past events would be directly contrary to the policies underlying section 10(b) and amount to the revival of legally defunct unfair labor practices." 446 F.2d at 215.

We decline to follow NLRB v. Strong, ante.

The order will not be enforced.