**NATIONAL LABOR RELATIONS BOARD, Petitioner-Appellant,**

v.

**McCREADY AND SONS, INC., and Melco Construction, Inc., Respondents-Appellees.**

No. 72–1320.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 16, 1972.

Decided June 29, 1973.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., Jerome H. Brooks, Director Region 7, N.L.R.B., Detroit, Mich., Robert A. Giannasi, N.L.R.B., for petitioner-appellant; Peter G. Nash, Gen. Counsel, Stephen J. Solomon, Allen H. Feldman, Attys., N.L.R.B., on brief.

Craig A. Miller, Kalamazoo, Mich., for respondents-appellees; Gemrich, Moser, Dombrowski, Bowser & Garvey by Craig A. Miller, Kalamazoo, Mich., on brief for McCready and Sons, Inc.; Hubbell, Blakeslee, McCormick & Houlihan by James R. McCormick, Traverse City, Mich., on brief for Melco Construction, Inc.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and GUBOW, District Judge.*

---

* Honorable Lawrence Gubow, Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

GUBOW, District Judge.

The National Labor Relations Board (hereinafter the Board), after a hearing before a Trial Examiner, found that Respondent employers, McCready and Sons, Inc. and Melco Construction Inc., (hereinafter referred to as McCready and Melco respectively), were guilty of unfair labor practices in violation of Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and 158(a)(5). Respondents were ordered to execute and honor the 1970–1973 contract which the Board found had been entered into between McCready, Melco and other employer-contractors on the one hand, and the Laborer's Local Union No. 1247 on the other. The Board petitions this court for enforcement of its Order. We have jurisdiction by virtue of Section 10(e) of the Act, 29 U.S.C. § 160(e).

Respondents oppose the enforcement of the Board's Order, contending that the Board's action was barred by the six-month limitation provision of Section 10(b) of the Act, 29 U.S.C. § 160(b). In addition, McCready contends that it was not a party to the alleged contract and, furthermore, that it had grounds for challenging the Union's representative status at the time in question. Our disposition of the Section 10(b) issue makes it unnecessary to reach the merits of McCready's additional defenses.

Respondents and other building contractors in northwestern Michigan have, in the past, negotiated with the Union on a multi-employer basis, utilizing a single spokesman to present their position. The agreements reached in these negotiations called for execution of individual agreements by individual contractors at a later time. Such negotiations led, on June 5, 1970, to the agreement involved in this case. For present purposes, we shall assume, without deciding, that this agreement was a contract and that both Melco and McCready were bound to execute it.

However, events subsequent to June 5, and prior to the time when Respondents were called upon to execute their individual agreements, led both Melco and McCready to believe that the Union no longer enjoyed representative status with respect to their employees. This belief was apparently based on expressions by employees of their disenchantment with the Union because of continuing strikes in the industry. We shall assume, without deciding, that these circumstances did not alter Respondents' legal obligation to execute individual contracts with the Union, based on the June 5 agreement.

On June 9, 1970, the Union ratified the June 5 contract. On August 3, 1970, a Union representative presented contracts to Walter McCready, Secretary-Treasurer of McCready, and to Melco's agent, James Mayer, for their signatures. Both Mr. McCready and Mr. Mayer unequivocally refused to sign on the grounds that the Union did not enjoy representative status.[1] At that time, the Union representative informed each Respondent that, because of the refusal to sign, the Union would pursue its legal remedies. Subsequently, in September 1970 and on February 8, 1971, when again asked to sign, Mr. McCready unequivocally reiterated his earlier refusal. Similarly, Mr. Mayer reiterated his refusal to sign on August 19, 1970, September 13, 1970, November 1970, January 1971, and on January 29, 1971.

On February 23, 1971, the Union filed unfair labor practice charges against both McCready and Melco for their refusal to sign the June 5 contract. These charges were the basis of a consolidated complaint which led to the Order for which enforcement is now sought. The charges were filed six months and twenty days after Respondents' first refusal to sign the contract, but within six months of subsequent refusals.

Section 10(b) of the Act (29 U.S.C. § 160(b)) provides, in pertinent part,

---

1. In Melco's case, it is stipulated that the August 3 refusal was unequivocal. In McCready's case, while the nature of the refusal was not the subject of a stipulation, the record does not leave room for doubt that it, too, was unequivocal.

"[t]hat no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board . . .". Respondents contend that this six-month limitation period was initiated by their August 3 refusals to sign the contract, and that since the charges were filed more than six months after August 3, the complaint is barred. The Board concedes that a complaint based on the August 3 refusals is barred. It is the contention of the Board, however, that each refusal subsequent to August 3 was itself an unfair labor practice, and that the complaint is supported by the refusals occurring within six months of February 23, 1971. This position is premised on the theory that a "continuing obligation" to execute the June 5 contract is imposed on Respondents by Section 8(a) of the Act. Under this theory, a complaint is valid if supported by a charge brought within six months of any refusal to execute made during the term of the contract.

The doctrine of "continuing obligation" is well established under the Act with respect to certain unfair labor practices. Most notably, the doctrine has received acceptance in cases of employers' discriminatory refusals to hire. Each time an employer discriminatorily refuses to hire a given employee, a separate, actionable unfair labor practice occurs; and Section 10(b) does not bar a complaint against an employer for such refusals to hire occurring within the six-month period, even if identical refusals to hire the same employee occurred outside the six-month period. *See*, Phelps Dodge Corporation v. N.L.R.B., 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); N.L.R.B. v. Textile Machine Works, 214 F.2d 929 (3rd Cir. 1954); N.L.R.B. v. Carpenters Local Union, 232 F.2d 454 (10th Cir. 1956).

This situation is to be distinguished, however, from one where the charge is based on the employer's refusal to rehire an employee discriminatorily discharged from employment. The continuing obligation doctrine has not been ap-

plied to allow complaints based on charges brought more than six months after the discharge but within six months of a refusal to rehire, since the illegality of such refusals derives from the illegality of the initial discharge. Machinists Local v. N.L.R.B., 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960); N.L.R.B. v. Textile Machine Works, *supra;* N.L.R. B. v. Pennwoven, 194 F.2d 521 (3rd Cir. 1952).

Unfortunately, precedent offers us uncertain guidance in resolving the precise issue which we face. Two circuit courts, on facts very similar to those before us here, have confronted the question of whether the doctrine of continuing obligation applies when the alleged unfair labor practice is the refusal to execute a contract. The Ninth Circuit holds to the view that each refusal to sign a contract occurring within the six-month period "in and of itself constitutes, as a substantive matter, [an] unfair labor practice." N.L.R.B. v. Strong, 386 F.2d 929, 931 (9th Cir. 1968). In contrast, the First Circuit, in N.L.R.B. v. Field & Sons, 462 F.2d 748 (1st Cir. 1972), expressly rejected the *Strong* case and held that if the first refusal to sign the contract occurred outside the six-month period, the action is barred by 10(b) even if subsequent refusals are made within the six-month period. The *Field* court reasoned that the refusal to execute the contract constituted "a failure to perform a particular act" and should be distinguished, for purposes of Section 10(b), from a general "failure to bargain, or breach of a general duty imposed by the Act as to which each refusal . . . may be a new unfair labor practice . . . ." 462 F.2d at 751. With reference to *Strong,* the *Field* court stated "[w]e do not think, in terms of a statute of limitations, that to label an act as an unfair labor practice should have substantive consequences any more than, for example, using the term breach of contract." 462 F.2d at 750.

While we agree with this sentiment, we are hesitant to embrace the equally slippery distinction, drawn by the *Field*

court, between a general failure to bargain and a failure to perform a particular act. Instead, it seems to us that analysis of the problem should focus on the purpose of Section 10(b) and on the needs of the defense.

"[T]he requirement of § 10(b) of the Act that the charge be filed within 6 months after the event was designed to give alleged violators opportunity to prepare defenses and to protect them against stale claims." N.L.R.B. v. Waterfront Employers, 211 F.2d 946, 955 (9th Cir. 1954). "Congress inserted this limitation provision because there had been complaint that people were being brought to book upon stale charges." N.L.R.B. v. Pennwoven, *supra* at 524. In a case where the alleged violation is the discriminatory refusal to hire, this design is not thwarted by application of the continuing obligation doctrine since the employer's defense in any event would relate to his motives or legitimate business purposes at the time of the refusal on which the charge is based. *See,* e. g., Lummus Co. v. N.L.R.B., 119 U.S.App.D.C. 229, 339 F.2d 728 (1964). In contrast, where the alleged violation is the refusal to rehire a discriminatorily discharged employee, it is obvious that an employer's defense would focus on his motive or business purpose at the time of the discharge. *See* Machinists Local v. N.L.R.B., *supra*. Application of the continuing obligation doctrine to allow revival of such a charge on each occasion of the employer's refusal to rehire would clearly jeopardize the employer's opportunity to prepare defenses and would risk subjecting him to a stale claim. *See* N.L.R.B. v. Pennwoven, *supra* at 525.

■ As in the case of a refusal to rehire a discriminatorily discharged employee, application of the continuing obligation doctrine to a charge of refusal to execute a contract is inconsistent with the purposes of § 10(b). An employer so charged would predictably defend against such a charge by denying that a contract binding on him had in fact been formed. Indeed, this is precisely the defense asserted by McCready before the Board and here. Establishment of such a defense could and probably would require reference to facts and occurrences surrounding the contract negotiations, as it did in McCready's case.[2] With the passage of time, those facts become harder to prove as memories fade and witnesses become unavailable. Adoption of the position urged upon us by the Board would allow a charge to be brought at the whim of a union at any time within the term of the contract at issue—in this case three years. During this period, the employer is left in a precarious position, uncertain of his liability and bearing an onus of defense which increases with time. This clearly contravenes the purpose of Section 10(b).

■ Nor is there anything in our case to suggest that strict application of the 10(b) limitation would work a hardship on the Union. It is apparent that the battle lines were clearly drawn on the date of the first refusals—August 3, 1970. The employers unequivocally refused to execute the contract on that date. The Union Representative expressed his intent to pursue legal remedies. On occasions of subsequent refusals, the employers merely reiterated the reasons initially given for refusing.[3] On August 3, when Mr. McCready and Mr. Mayer refused to execute the contract and the Union Representative knew, or thought he knew, that an unfair labor practice had taken place, Respondents' liability accrued and, absent a change in their position in the interim,

---

2. McCready argued that the employers' representative in the negotiations leading to the June 5 agreement was without authority to bind McCready.

3. Were this not the case, our decision here might well be different. In this regard, it is noteworthy that in N.L.R.B. v. Strong, *supra*, the employer twice changed his reason for refusing to sign the contract.

action against the Respondents was barred by Section 10(b) after six months had elapsed. *See* N.L.R.B. v. Pennwoven, *supra* at 525.

Enforcement of the Order of the Board is denied.