NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

SERV-ALL CO., INC., Respondent.

No. 73-1276.

United States Court of Appeals,
Tenth Circuit.

Feb. 27, 1974.

Allen H. Feldman, Washington, D. C. (Alan D. Cirker, Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, and Elliott Moore, Asst. Gen. Counsel, N.L.R.B., on the brief for petitioner.

John J. Mahon, Albuquerque, N. M. (Leonard L. Pickering, Albuquerque, N. M.), on the brief for respondent.

Before LEWIS, Chief Judge, and MURRAH and HOLLOWAY, Circuit Judges.

LEWIS, Chief Judge.

The National Labor Relations Board (Board), adopting the findings and recommendations of a Trial Examiner, determined that respondent Serv-All Co., Inc. was in violation of §§ 8(a)(1), (5) and 8(d) of the National Labor Relations Act and issued a remedial order. The Board now seeks enforcement of its order. The matter was heard before the full Board and its decision is reported at 199 N.L.R.B. No. 159, the chairman and one member dissenting. The respondent opposes enforcement contending, in accord with the reasoning of the dissenters, that the Board's decision is contrary to the limitation mandate of § 10(b) of the Act. The facts are detailed in the Board opinions and may be narrated for the purpose of our review.

In 1966, the Mechanical Contractors Association (MCA), a New Mexico group of plumbing and piping contractors, entered into a collective bargaining agreement with the designated Union.[1] The

---

1. United Association of Journeymen and Apprentices of the Plumbing & Pipefitting In-   dustry of the United States & Canada, Local No. 412, AFL-CIO.

agreement provided that non-association members could become parties by separately signing the association agreement. The association was designated agent for receipt of notice for reopening and for termination of the agreement for all nonmembership employers. A section of the agreement provided that unless the employer gave written notice 60 days prior to the expiration or termination of the agreement indicating to the contrary, the employer agreed to be bound by the terms and conditions of the succeeding collective bargaining agreement, including any amendments, extensions and renewals which might be negotiated. Respondent, a commercial air conditioning contractor, became a separate signatory party to the contract.

In 1968, the contract was reopened for negotiation and by bilateral agreement of the signatory parties the contract's termination date was extended to March 31, 1970.[2] In 1969, MCA and the Union again began negotiations for a new contract. During the course of these negotiations difficulties arose and the Union sought and received from 20–30 non-association parties a letter of intent that such parties would abide by the ultimate contract result of the negotiations. Respondent refused to sign such a letter and as a result thereof four of respondent's eight employees refused to work after the Union struck MCA in May 1970. In June 1970, the Union and MCA reached an oral agreement and the strike was terminated. A formal contract was signed by these parties on July 11, 1970. In June 1970 respondent filed a representation petition with the Board contending the Union no longer represented a majority of its employees and in September respondent refused to pay the health benefits and wage increases contained in the July 11 contract.

On March 18, 1971, the Union filed its charging complaint with the Board leading the Board dissenters to the conclusion that the complaint should be dismissed because "all the operative facts occurred more than six months before the charge was filed."[3] The majority of the Board reject this reasoning stating:

While it is true that Respondent's initial refusal to sign or abide by the contract, the strike, and Respondent's filing of the RM petition all occurred outside the 10(b) period, there were other incidents, outlined in the Trial Examiner's Decision, which are sufficient, in our opinion, to indicate that Respondent's initial refusal to bargain *recurred* well within the 6-month period. We believe that the colloquy that occurred during the RM hearing, which is quoted in the dissent, in effect constitutes a refusal to sign the agreement. (emphasis added.)

The issue for our determination thus resolves to whether respondent's conduct constituted a continuing violation of the Act or whether the respondent's initial refusal to bargain or to abide by the contract terms triggered the time bar of § 10(b) and thereafter it committed no actionable unfair labor practice.

■■ We are convinced from our review of the total record that respondent clearly negatived any obligation to abide by the result of the Union-MCA negotiations, or to bargain with the Union, several months earlier than the six-month period prior to the filing of the complaint. Whether this conduct by respondent did or did not, when viewed in isolation, constitute an unfair labor practice is patently a stale issue and clearly within the shelter of § 10(b). So, too, we hold that the record does not adequately support the finding of the Board majority that respondent's initial refusal

---

2. This action precluded respondent from giving timely notice to terminate under the explicit terms of the agreement.

3. Section 10(b) of the Act provides in pertinent part that

. . . no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board. . . .

*recurred* within the applicable six-month period. Here the Board does not rely on a specific request by the Union to sign or negotiate and a refusal by respondent, but infers such refusal from the following testimony given at the hearing:

Q. [By Mr. Kool, Counsel for the Union] And you testified that the union hadn't asked you to sign this agreement?

A. [By Mr. Blankenship, president of Respondent] Not that I know of.

Q. If I handed it to you now, would you sign it?

A. No, sir.

Q. Why not?

A. That's my purpose for being here.

We do not, nor could the Board dissenters, accept the decision of the Board and consequently we conclude that the reasoning and findings of the dissent are sound and dictated by the record in fact. But we also hold that the majority decision is faulty in law and not dependent upon the fact issue of whether respondent refused to sign during the six-month period preceding the complaint.

The First Circuit in NLRB v. Field & Sons, 462 F.2d 748, specifically held that § 10(b) barred prosecution of a multiemployer association member who had refused to sign a bargaining agreement in July 1969, was again requested and refused to sign in July 1970 and then charged. We agree with that result. The Sixth Circuit in NLRB v. McCready & Sons, 482 F.2d 872, reached the same result reasoning that any application of a continuing obligation doctrine under facts remarkably similar to those we have here considered is inconsistent with the purposes of § 10(b). The court there stated:

An employer so charged would predictably defend against such a charge by denying that a contract binding on him had in fact been formed. Indeed, this is precisely the defense asserted . . . before the Board and here. Establishment of such a defense could

and probably would require reference to facts and occurrences surrounding the contract negotiations, . . . With the passage of time, those facts become harder to prove as memories fade and witnesses become unavailable. Adoption of the position urged upon us by the Board would allow a charge to be brought at the whim of a union at any time within the term of the contract at issue—in this case three years. During this period, the employer is left in a precarious position, uncertain of his liability and bearing an onus of defense which increases with time. This clearly contravenes the purpose of Section 10(b). 482 F.2d at 875.

We agree with the reasoning of the Sixth Circuit.

Enforcement is denied.