**Curtis WISE, Plaintiff,**

v.

**DALLAS & MAVIS FORWARDING CO., Drivers, Chauffeurs, Warehousemen and Helpers Local No. 71, and Central States, Southeast and Southwest Areas Pension Fund, Defendants.**

**No. C–C–90–167–P.**

United States District Court, W.D. North Carolina.

Jan. 15, 1991.

See also 751 F.Supp. 90.

Louis L. Lesesne, Jr., Charlotte, N.C., for plaintiff.

Francis J. Carey, Rosemont, Ill., C. John Holmquist, Jr., Birmingham, Mich., Philip Van Hoy, Francis M. Fletcher, S. Dean Hamrick, Charlotte, N.C., and Hugh J. Beins, Washington, D.C., for defendants.

## MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Defendants' three (3) motions for summary judgment. On December 21, 1990, Defendant Central States, Southeast and Southwest Areas Pension Fund (hereinafter "Central States") filed its motion for summary judgment. Defendant Drivers, Chauffeurs, Warehousemen and Helpers Local No. 71 (hereinafter "Local 71") filed its summary judgment motion on December 26, 1990. Defendant Dallas & Mavis Forwarding Co. (hereinafter "Dallas & Mavis"), on December 27, 1990, filed its motion for summary judgment. Plaintiff Curtis Wise (hereinafter "Plaintiff") filed a memorandum opposing Defendants' motions on January 7, 1990.

### I. THE PARTIES.

Plaintiff is a resident of Mecklenburg County, North Carolina. From January, 1980 until February, 1990, Plaintiff was employed by Dallas & Mavis as a truck driver.

Dallas & Mavis is a North Carolina corporation with its principal place of business in Mt. Holly, North Carolina. Dallas & Mavis is in the business of transporting

heavy duty truck tractors from its terminal facility.

Local 71 is an unincorporated labor organization with its principal place of business in Mecklenburg County, North Carolina. Local 71 is an affiliated local union with the International Brotherhood of Teamsters (hereinafter "national Teamsters Union"). In 1981, Local 71 organized Dallas & Mavis employees and was certified as a collective bargaining unit for those employees.

Central States manages Employee Pension Funds pursuant to § 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A) and is thus subject to regulation by ERISA. Central States administers various pension plans that provide retirement pensions to employees who work in Teamster shops pursuant to national collective bargaining agreements that require employers to make contributions to the plan on the behalf of employees, and who reach the age and service requirements stated in the Plan for the applicable pension benefits.

## II. FACTUAL BACKGROUND.

The facts presented to the Court by all parties are for the most part undisputed. In January, 1980, Plaintiff was employed by Dallas & Mavis. In 1981, Local 71 was recognized by Dallas & Mavis as a collective bargaining unit for the 8 to 10 members of the bargaining unit. Shortly thereafter, negotiations ensued between Dallas & Mavis and Local 71 concerning whether contributions on behalf of the employees should be made to the Central States Pension Fund or whether the Dallas & Mavis profit sharing and health care plan currently in effect should be retained. Although the national Teamsters Union was initially reluctant to allow the employees to choose the Dallas & Mavis plan in lieu of Central States Pension Plan, Local 71 was ultimately advised by the national union that the employees could vote on the plan they desired.

Notwithstanding the recommendation of Local 71 for the employees to go with the Central States Pension Fund, a vote of the employees was conducted with the result being a majority of employees voted to retain the Dallas & Mavis plan currently in effect. Because Plaintiff had 13 years previous credit with the Central States plan through previous employment, he voted in favor of adopting the Central States Pension Fund.

Sometime after the vote in late, 1982 or early, 1983, Plaintiff engaged in a series of conversations with representatives of Dallas & Mavis and Local 71 to see if it was possible for him to alone be covered by the Central States plan. Ultimately, Local 71 took the position that all of the employees had to be covered by the same plan, and that it was not possible for Dallas & Mavis to contribute to the Central States plan on Plaintiff's behalf. After being informed of the decision, Plaintiff stated, "[I]n other words, I'm just getting messed out of it then. I'm not getting my Teamster retirement (from the Central States Pension Fund)". *See Deposition of Plaintiff,* July 12, 1990, at 34 (hereinafter "Plaintiff's Dep.").

A few days after learning that Dallas & Mavis would not contribute to the Central States plan, Plaintiff went to the union hall to discuss filing a grievance with Larry Miller, a representative of Local 71. Miller reiterated that there could not be two pension funds and refused to accept a grievance from Plaintiff. During 1984, Plaintiff did not discuss the matter further with representatives of Dallas & Mavis or Local 71. During this period of time, Plaintiff received documents from Dallas & Mavis advising him of the status of his profit sharing account. *See Plaintiff's Dep.* at 41.

In 1985, another vote in relation to pension funds was conducted among Dallas & Mavis employees. Local 71 continued to recommend that the employees vote for participation in the Central States plan. Nonetheless, an overwhelming number of the employees voted to stay with the Dallas & Mavis plan. Again, Plaintiff voted for the Central States Pension Fund.

On September 5, 1985, Plaintiff wrote to the national Teamsters Union stating that he believed that the vote by the employees might "undermind (sic) the (national collec-

tive bargaining) contract and the union." *See Plaintiff's Dep.* at exhibit 2. Moreover, Plaintiff stated that he believed the vote "[u]ndercuts the national (pension) contract and my future retirement". *Id.* Thereafter, a representative of the national Teamsters Union responded to Plaintiff's letter and indicated that the employees choice of staying with the Dallas & Mavis plan was legitimate under the national contract. Plaintiff then threw the letter into a drawer, concluding that there was nothing else he could do. *See Plaintiff's Dep.* at 113.

In 1989, Plaintiff contacted another representative of the national Teamsters Union, Ernest Tuscino. Thereafter, Larry Miller filed a grievance on behalf of Plaintiff and the other members of Local 71 regarding their exclusion from the Central States Pension Plan. Through the contractually mandated grievance procedure, Plaintiff's grievance was heard at three (3) levels without a final resolution being reached. On February 1, 1990, the grievance was presented to the National Joint Arbitration Committee in Clearwater, Florida. The Committee denied the grievance based on the facts that the employees of Dallas & Mavis had voted upon their inclusion in the employer's profit sharing plan and that Plaintiff had delayed in bringing a grievance for eight (8) years from the initial vote.

On June 1, 1990, Plaintiff filed the complaint in this case. The complaint sets forth three (3) claims for relief. First, Plaintiff alleges that Dallas & Mavis and Local 71 violated § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (hereinafter "§ 301") by failing to comply with the national Teamsters Union collective bargaining agreement, and by Local 71's failure to comply with its duty of fair representation by failing to take appropriate steps to require Dallas & Mavis to comply with its contractual obligation. Second, Plaintiff contends that Dallas & Mavis failed to make the contributions to the Central States Pension Fund as required by the national collective bargaining agreement, and thus, Plaintiff is entitled under § 502 of ERISA, 29 U.S.C. § 1132(a)

to enforce his rights under the Central States plan. Third, Plaintiff asserts that Central States violated its fiduciary duty by failing to require Dallas & Mavis to comply with the requirements of the plan to make weekly contributions on his behalf in violation of 29 U.S.C. § 1104(a)(1)(D).

## III. APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT.

Summary judgment is appropriate when the pleadings, responses to discovery, and the record reveal that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. *See* Rule 56(c) of the Federal Rules of Civil Procedure. The party moving for summary judgment has the initial burden of showing that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After the moving party has met its burden, the non-moving party must come forward with specific facts showing that evidence exists to support its claims and that a genuine issue for trial exists. *Id.; Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see* F.R.Civ.P. 56(e) (in response to motion for summary judgment, "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). When considering motions for summary judgment, courts must view facts and inferences from the facts in the light most favorable to the party opposing the motion for summary judgment. *Matsushita,* 475 U.S. at 587–88, 106 S.Ct. at 1356; *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When, however, the evidence from the entire record could not lead a rational fact finder to find for the non-moving party, no genuine issue for trial exists and

summary judgment is appropriate. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

## IV. MOTIONS FOR SUMMARY JUDGMENT.

In the motions currently before the Court, Defendants raise numerous arguments in support of their contention that summary judgment is appropriate in this case. In particular, Local 71 and Dallas & Mavis assert that under § 301 of the Labor Management Relations Act, the first claim for relief is barred by the six (6) month statute of limitations. Central States and Dallas & Mavis also argue that the second and third claims for relief are barred under the three (3) year statute of limitations for ERISA claims. Because the Court finds these arguments to be persuasive and that summary judgment is warranted based on these arguments, the Court will not address the Defendants' alternative arguments. A discussion of the statute of limitations arguments follows.

### A. *Statute of Limitations for § 301 Claim.*

It is without dispute that the applicable statute of limitations for a hybrid § 301 claim in which the employee alleges that the employer breached a labor agreement and the union violated its duty of fair representation is found in Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *See Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983). The applicable period in § 160(b) is six (6) months. However, the statute is silent as to when the cause of action accrues.

■ While the Court is unaware of any Fourth Circuit case addressing the accrual of a hybrid § 301 cause of action, a plethora of courts have found that a cause of action in a hybrid § 301 action accrues when the employee knows or should have known through an exercise of reasonable diligence of the acts constituting the alleged violation. *See Dyas v. A.L. Lockhart,* 878 F.2d 1105, 1108 (8th Cir.1989); *Arriaga–Zayas v. International Ladies'* *Garment Workers' Union—Puerto Rico Council,* 835 F.2d 11, 13 (1st Cir.1987); *West v. Conrail,* 820 F.2d 90 (3rd Cir.1987); *King v. New York Telephone Co., Inc.,* 785 F.2d 31, 34 (2d Cir.1986); *Dowty v. Pioneer Rural Electric Cooperative, Inc.,* 770 F.2d 52, 56 (6th Cir.1985). A district court in a motion for summary judgment of a § 301 claim based on the running of the statute of limitations is left with the task of determining when an employee became aware of the breach by the employer of the collective bargaining agreement, as well as determining when the employee became aware that the union was not exercising its duty of fair representation. As one court has noted, "... [w]here an employee bringing suit against his employer for breach of contract also alleges that the union representing him in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation, the claims against both the employer and the union accrue no later than the time when plaintiff knew or reasonably should have known that such a breach had occurred, even if some possibility of nonjudicial enforcement remained." *King,* 785 F.2d at 34. Accordingly, the Court must first determine when Plaintiff was aware of the alleged breach by Dallas & Mavis.

■ In this case, there is no genuine issue of material fact in dispute regarding when Plaintiff became aware that he was not going to be covered by the Central States Pension Fund. In Plaintiff's deposition, Plaintiff stated on numerous occasions that in 1982 or 1983 during a discussion between representatives of Dallas & Mavis and Local 71 he was informed that only one pension plan could be implemented for the company; that the employees had voted on two occasions that the pension plan of choice was the Dallas & Mavis profit sharing plan; and that Plaintiff was aware that he was not going to be covered by the Central States Pension Plan. *See Plaintiff's Dep.* at 27, 30, 34, 71, and 79. Moreover, it is undisputed that Plaintiff in a 1985 letter to a representative of the national Teamsters Union stated that he

believed the decision by Dallas & Mavis and Local 71 to permit the employees to choose the Dallas & Mavis profit sharing plan over the Central States Pension Plan violated the national collective bargaining agreement. Therefore, the Court believes that Plaintiff's § 301 cause of action accrued no later than 1985, and that the six (6) month statute of limitations precludes this action being brought.

Plaintiff does not argue that any of the traditional tolling provisions for a statute of limitations are applicable to this case. Instead, Plaintiff argues that under the national collective bargaining agreement, Dallas & Mavis was obligated to make weekly contributions on behalf of the employees to the Central States Pension Plan. Plaintiff contends that each failure by Dallas & Mavis to make the necessary contributions constituted a continuing violation. Thus, since Dallas & Mavis was obligated to make a contribution in June, 1990, Plaintiff argues that the cause of action did not accrue until then.

The Court believes that Plaintiff's argument emasculates the statute of limitations for § 301 cause of actions. The continuing obligation doctrine does not permit Plaintiff to sit on his cause of action for no less than five (5) years and then to claim it did not accrue until he chooses to bring the action. Such an application of the continuing obligation doctrine to a charge of refusal to execute a contract is inconsistent with the purpose of § 10(b). *See N.L.R.B. v. McCready and Sons, Inc.*, 482 F.2d 872, 875 (6th Cir.1983). An employer is left in a precarious position if the employee is able to bring an action anytime during the tenure of the contract. *Id.* Therefore, when the employee "... [k]new, or thought he knew, that an unfair labor practice had taken place, (the defendants) liability accrued and ... action against (the defendants) was barred by Section 10(b) after six months had elapsed", notwithstanding the continuing obligation doctrine. *Id.; see also Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 306 (7th Cir.1983).

In this case, Plaintiff was aware at the latest by 1985 that Dallas & Mavis was not going to contribute to the Central States Pension Plan on his behalf. Accordingly, he was obligated to bring his action within six (6) months of discovering this information. Moreover, it was readily apparent to Plaintiff in 1982 or 1983 after discussing the matter with Larry Miller that the union was not going to pursue a grievance. Thus, Plaintiff "[s]hould have realized at some point during ... the period prior to the commencement of this suit that the union was taking no action on his behalf ...". *See Mallory v. Ingersoll–Rand Co.*, 621 F.Supp. 1040, 1045 (W.D.Va.1985).

Because the Court believes Plaintiff failed to bring this action within the six (6) month statute of limitations as required in § 301, Defendants' motions for summary judgment of the first claim for relief will be granted.

**B.** *Statute of Limitations for ERISA Claims.*

Plaintiff's second and third claims for relief allege violations of ERISA provisions.

■ The second claim for relief alleges a claim to enforce Plaintiff's rights to benefits pursuant to § 502 of ERISA, 29 U.S.C. § 1132(a). That provision does not contain an express statute of limitations. In most instances, courts apply the most analogous state statute of limitations. *See Dameron v. Sinai Hospital of Baltimore, Inc.*, 815 F.2d 975, 981 (4th Cir.1987). This Court has found that the North Carolina three (3) year statute of limitations for contract actions, codified at N.C.Gen.Stat. § 1–521(1), is most analogous to an ERISA action. *See United Food & Commercial Workers v. Harris–Teeter*, 716 F.Supp. 1551, 1560 (W.D.N.C.1989).

The third claim for relief alleges that Central States breached its fiduciary duty in violation of 29 U.S.C. § 1104(a)(1)(D). The limitation period for filing such an action is set forth in 29 U.S.C. § 1113(a). That statute provides an explicit three (3) year statute of limitations. *Id.*

■ Just as in the case of § 301 limitations periods, there is not an express provi-

sion in ERISA indicating when the cause of action accrues. The Fourth Circuit in a recent case has indicated that the cause of action in an ERISA case normally does not accrue until a claim for benefits has been made and formally denied. *See Cotter v. Eastern Conference of Teamsters Retirement Plan,* 898 F.2d 424, 428–29 (4th Cir. 1990) (citing *Rodriguez v. MEBA Pension Trust,* 872 F.2d 69, 72 (4th Cir.1989)). As the Fourth Circuit has noted, however, the application of *Rodriguez* in cases in which no claim has been made is "... [t]ricky because specification of the date at which (the) claim for benefits is somewhat elusive". *Id.* at 429. Therefore, when there has not been a formal request for benefits, the Fourth Circuit has directed courts to apply the alternative approach of determining the time at which some event should have alerted the employee that he was entitled to benefits. *Id.*

At no time has Plaintiff made a formal request for benefits from Central States. As previously discussed, Plaintiff was aware that he was not covered by the Central States Pension Plan as early as 1982 or 1983. In 1985, Plaintiff wrote a letter to the representative of the national Teamsters Union indicating that he believed he was entitled to benefits from Central States. Therefore, the Court believes Defendant was aware no later than 1985 that he was not going to receive benefits from Central States, and that his failure to file this action three (3) years from that date in accordance with the applicable statute of limitations constitutes a bar to this action. Accordingly, the Court will grant Defendants' motion for summary judgment of the second and third claims for relief.

## V. ORDER OF THE COURT.

NOW, THEREFORE, IT IS ORDERED that Defendants' motions for summary judgment be, and hereby are, GRANTED. This matter is hereby DISMISSED with prejudice.